Olivia Lee BROWN, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Candace CLARK, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Tiela JONES, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Jean Ann WONG, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Nos. 2961, 2936, 2989 and 2863.

Supreme Court of Alaska.

Sept. 8, 1978.

Sue Ellen Tatter and Sandra K. Saville, Kay, Christie, Fuld & Saville, Anchorage, for appellant Brown.

Allen M. Bailey, and William F. Reeves, Municipal Prosecutors, and Richard W. Garnett, III, Municipal Atty., Anchorage, for appellee.

William F. Bulchis and Richard B. Collins, Collins, Inc., Anchorage, for appellants Clark, Jones, and Wong.

OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

CONNOR, Justice.

This consolidated appeal arises from four criminal cases based on Anchorage Municipal Ordinance 8.14.110 which prohibits loitering for the purpose of solicitation of prostitution. This ordinance, which we will refer to as AO 8.14.110, provides as follows:

"No person will loiter in or near a thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of, inducing, enticing, soliciting or procuring another to participate in an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that such person: is a known prostitute or panderer; repeatedly beckons to, stops, attempts to stop, or engages male passersby in conversation; or repeatedly stops, or attempts to stop, motor vehicle operators by hailing, waving of arms, or any other bodily gestures. No arrest shall be made for a violation of this section unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this section if it appears at trial that the explanation given was true and discloses

a lawful purpose. For the purpose of this section, a 'known prostitute or panderer' is a person who within five years previous to the date of arrest for violation of this section has within the knowledge of the arresting officer been convicted of violating a provision of the city of Anchorage, state of Alaska, or a political subdivision thereof, defining and punishing acts relating to prostitution or lewdness which are similar to those acts proscribed by this section."

Separate issues are raised in each of these appeals. However, because we find the ordinance in question to be unconstitutionally vague and, therefore, void, we need not consider appellants' other claims of error.[1]

As we observed in *Marks v. City of Anchorage*, 500 P.2d 644, 646 (Alaska 1972), a vague statute violates the due process clause if "its indefinite contours confer unbridled discretion on government officials and thereby raise the possibility of uneven and discriminatory enforcement."[2] A literal reading of the ordinance before us discloses such an infirmity. AO 8.14.110 sets out separate and disjunctive circumstances which may be considered in determining whether a person who is loitering manifests the purpose of soliciting for prostitution. One such circumstance is that the person "is a known prostitute or panderer." Thus anyone known to police to have committed a prostitution-related offense within the past five years is subject to arrest under this ordinance if he or she is found "loitering."

Applying a dictionary definition of the word "loiter", one could conclude that the ordinance makes it a crime for a previously convicted prostitute or panderer to "spend time idly;" to "linger in an aimless way;" or "to walk or move slowly and indolently, with frequent stops and pauses."[3] As Mr. Justice Douglas observed in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 844, 31 L.Ed.2d 110, 116–117 (1972), the virtues of aimless strolling have been sung by such giants of American literature as Walt Whitman, Vachel Lindsay, and Henry David Thoreau. When engaged in by most citizens, such activities as sauntering down a public sidewalk or pausing on a street corner would carry no criminal liability. If a formerly convicted prostitute or panderer, however, should engage in window shopping, or standing on a street corner to wait for a bus, he or she could be found guilty of violating the Anchorage municipal ordinance without committing any overt act demonstrating that he or she induced, enticed, solicited, or procured another to engage in an act of prostitution. This would mean that a previously convicted prostitute or panderer could stand on a public street corner or walk slowly down a public sidewalk only at the whim of any police officer.

"The constitutional vice of so broad a provision needs no demonstration. It 'does not provide for government by

---

1. Among the issues which we do not reach are whether the ordinance is overbroad, whether the ordinance violates the equal protection clauses of the Alaska and federal constitutions, whether it is proper to admit evidence of a prior prostitution-related offense, and whether the arrest of one of the appellants was unlawful because it was a misdemeanor allegedly not committed in the presence of the arresting officer. In addition, procedural questions were raised, as well as challenges involving the sufficiency of the evidence and the propriety of certain jury instructions.

2. We discussed the void-for-vagueness doctrine, as well as the authorities on which it rests, at some length in our opinion in *Marks v. City of Anchorage, supra. See also Papachristou v. City of Jacksonville*, 405 U.S. 156, 162,

31 L.Ed.2d 110, 115 (1972); *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176, 179 (1965); *State v. Marathon Oil Co.*, 528 P.2d 293, 297 (Alaska 1974); *Stock v. State*, 526 P.2d 3, 8 (Alaska 1974); *Poole v. State*, 524 P.2d 286, 289 n.15 (Alaska 1974). Cf. *Anderson v. State*, 562 P.2d 351 (Alaska 1977); *State v. Martin*, 532 P.2d 316 (Alaska 1975). See generally Amsterdam, *Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the Like*, 3 Crim.L.Bull. 205 (1967).

3. Webster's New World Dictionary of the American Language (Second College Edition 1972).

clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' " [4]

 The Municipality argues that the ordinance does not encourage arbitrary arrests and convictions because of the narrowing effect of the reference in the ordinance to known prostitutes and panderers. However, "not even past violation of the criminal law authorizes one's subjection to innately vague statutory specifications of crime." *Ricks v. District of Columbia*, 134 U.S.App.D.C. 201, 214, 414 F.2d 1097, 1110 (1968); *see also Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). The Municipality also claims that the ordinance can be saved from a vagueness attack because it affords the suspect the opportunity to explain his or her conduct. We do not agree. The opportunity to explain one's conduct provides little protection from police harassment when it remains for the arresting officer to decide whether he or she is satisfied with the explanation given.[5]

A fair reading of AO 8.14.110 discloses that the ordinance on its face gives enforcement officials excessive discretion, inviting by its inexactitude arbitrary enforcement and uneven application. We can think of no construction which will save the statute from this infirmity. Therefore, we hold that AO 8.14.110 is void for vagueness. Accordingly, appellants' convictions under this ordinance must be reversed.

REVERSED.

**4.** *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176, 179 (1965), *quoting Cox v. Louisiana*, 379 U.S. 536, 579, 85 S.Ct. 453, 469, 13 L.Ed.2d 471, 501 (separate opinion of Mr. Justice Black) (footnotes omitted).

**5.** *See Ricks v. District of Columbia, supra. See also* the remarks of President Roosevelt in vetoing a vagrancy law for the District of Columbia, in which he said:

"It would hardly be a satisfactory answer to say that the sound judgment and decisions of the police and prosecuting officers must be trusted to invoke the law only in proper cases. The law itself should be so drawn as not to make it applicable to cases which obviously should not be comprised within its terms."

H.R.Doc. No. 392, 77th Cong., 1st Sess., *quoted in Papachristou v. City of Jacksonville, supra*, 405 U.S. at 166 n.10, 92 S.Ct. at 845 n.10, 31 L.Ed.2d at 118 n.10.