[No. D029293. Fourth Dist., Div. One. Apr. 10, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
SHERRIE LYNN PULLIAM, Defendant and Appellant.

## COUNSEL

Scott William Davenport and Oliver P. Cleary for Defendant and Appellant.

Paul J. Pfingst, District Attorney, Thomas F. McArdle, Sharla Evert, David B. Songco and James E. Atkins, Deputy District Attorneys, for Plaintiff and Respondent.

## OPINION

**McDONALD, J.**—The jury found appellant Sherrie Lynn Pulliam (Pulliam) guilty of loitering in a public place with intent to commit an act of prostitution in violation of Penal Code[1] section 653.22. Pulliam's sole contention on appeal is that section 653.22 is unconstitutional because it is vague and overbroad.[2]

### FACTS

On November 12, 1996, Officer Steveson received a radio call around 10:30 p.m. reporting prostitutes loitering on Roosevelt Avenue in National City. As Steveson approached the area in his patrol car he saw Pulliam standing on the sidewalk waving her arms toward a passing vehicle. She was wearing a black tight-fitting miniskirt and a jacket partially unzipped to reveal the inner portions of her breasts.

Pulliam was standing on a street within a five-block area known for prostitution activity. There were open businesses and houses in the five-block area. During the 15 to 20 seconds that Steveson watched Pulliam she did not walk toward or away from any of the open businesses or houses.

After watching Pulliam for 15 to 20 seconds, Steveson approached and asked her what she was doing. Pulliam replied she was there to engage in prostitution but had just arrived and had made no money that night. Pulliam was arrested, tried and convicted for violating section 653.22.

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] Because this is a case of first impression the appellate department of the San Diego County Superior Court certified Pulliam's appeal for transfer to this court. (Code Civ. Proc., § 911; Cal. Rules of Court, rule 63.)

## The Challenged Statute

Pulliam challenges the constitutionality of section 653.22, which provides: "(a) It is unlawful for any person to loiter in any public place with the intent to commit prostitution. This intent is evidenced by acting in a manner and under circumstances which openly demonstrate the purpose of inducing, enticing, or soliciting prostitution, or procuring another to commit prostitution."

Subdivision (b) of section 653.22 specifies a nonexclusive list of circumstances that may be considered to determine whether a person loiters with the requisite intent. Subdivision (c) of that section states the factors listed in subdivision (b) are "particularly salient if they occur in an area that is known for prostitution activity" but permits consideration of all relevant circumstances to determine whether a person has the requisite intent.[3]

## The Vagueness Claim

■ A penal statute must sufficiently delineate the proscribed conduct to enable an ordinary person of common intelligence to understand what conduct is prohibited and to discourage arbitrary and discriminatory enforcement. (*Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [103 S.Ct. 1855, 1858, 75 L.Ed.2d 903] (hereafter *Kolender*).) As the court in *Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069 [40 Cal.Rptr.2d 402, 892 P.2d 1145] explained: "To satisfy the constitutional command, a statute must meet two basic

---

[3]The full text of section 653.22, subdivisions (b) and (c), states:

"(b) Among the circumstances that may be considered in determining whether a person loiters with the intent to commit prostitution are that the person:

"(1) Repeatedly beckons to, stops, engages in conversations with, or attempts to stop or engage in conversations with passersby, indicative of soliciting for prostitution.

"(2) Repeatedly stops or attempts to stop motor vehicles by hailing the drivers, waving arms, or making any other bodily gestures, or engages or attempts to engage the drivers or passengers of the motor vehicles in conversation, indicative of soliciting for prostitution.

"(3) Has been convicted of violating this section, subdivision (a) or (b) of [s]ection 647, or any other offense relating to or involving prostitution, within five years of the arrest under this section.

"(4) Circles an area in a motor vehicle and repeatedly beckons to, contacts, or attempts to contact or stop pedestrians or other motorists, indicative of soliciting for prostitution.

"(5) Has engaged, within six months prior to the arrest under this section, in any behavior described in this subdivision, with the exception of paragraph (3), or in any other behavior indicative of prostitution activity.

"(c) The list of circumstances set forth in subdivision (b) is not exclusive. The circumstances set forth in subdivision (b) should be considered particularly salient if they occur in an area that is known for prostitution activity. Any other relevant circumstances may be considered in determining whether a person has the requisite intent. Moreover, no one circumstance or combination of circumstances is in itself determinative of intent. Intent must be determined based on an evaluation of the particular circumstances of each case."

requirements: (1) The statute must be sufficiently definite to provide adequate notice of the conduct proscribed; and (2) the statute must provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. [Citations.] Only a reasonable degree of certainty is required, however. [Citation.] . . . ' ". . . A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' " (*Tobe* v. *City of Santa Ana, supra,* at pp. 1106-1107, quoting *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852].)

Therefore, section 653.22 satisfies due process if it provides adequate notice to citizens of the proscribed conduct and guidelines to permit nonarbitrary enforcement.

### A. *Adequate Notice of the Proscribed Activity*

█ We are convinced section 653.22 provides sufficient notice of the prohibited conduct. Section 653.22 prohibits loitering with the specific intent to commit prostitution. A substantively identical statute, which prohibited "loiter[ing] . . . for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act" (§ 647, subd. (d)), was found constitutional in *People* v. *Superior Court (Caswell)* (1988) 46 Cal.3d 381, 390 [250 Cal.Rptr. 515, 758 P.2d 1046] (hereafter *Caswell*). The *Caswell* court first held the "adequate notice" test was satisfied. It concluded the term "loitering" was not impermissibly indefinite (*ibid.*), and Pulliam concedes this term does not make section 653.22 vague. *Caswell* also concluded the requirement that the loiterer possess a described specific intent bolstered the adequacy of notice because "[p]ersons of ordinary intelligence need not guess at the applicability of the section; so long as they do not linger for the proscribed purpose, they have not violated the statute." (46 Cal.3d at p. 391.)

Section 653.22 is narrower and more precise than the statute considered in *Caswell*. The specific intent required in the statute considered in *Caswell* was the intent to engage in "any lewd or lascivious or any unlawful act" (§ 647, subd. (d)), a more amorphous intent than the intent of section 653.22 to commit prostitution. A comparison of the statute considered in *Caswell* with section 653.22 convinces us the adequate notice of proscribed conduct test for due process is satisfied.

### B. *Adequate Enforcement Guidelines*

Pulliam relies on *Kolender, supra,* 461 U.S. 352 to contend the absence from section 653.22 of sufficient guidelines circumscribing law enforcement's determination of what conduct violates the statute creates a risk that

innocent conduct will be punished. Pulliam argues the inclusion in section 653.22, subdivision (b) of innocent overt acts as indicia of the intent to commit prostitution exposes citizens to arrest and conviction for innocent conduct.

Substantially similar arguments to those raised by Pulliam were rejected by *Caswell*. *Caswell* began its adequate-guidelines analysis by distinguishing *Kolender*. The statute considered in *Kolender*, as construed by the courts, was violated if a person failed to produce "credible and reliable" identification when stopped by police. *Kolender* concluded the statute was invalid because it "contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification. . . . [T]he statute [therefore] vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute . . . ." (*Kolender, supra*, 461 U.S. at p 358 [103 S.Ct. at p. 1858].) Because of the absence of adequate guidelines, *Kolender* concluded, "full discretion [is] accorded to the police to determine whether the suspect has provided a 'credible and reliable' identification [which] necessarily 'entrust[s] lawmaking "to the moment-to-moment judgment of the policeman on his beat." ' [Citations.]" (*Kolender, supra*, at p. 360 [103 S.Ct. at pp. 1859-1860].)

*Caswell* held there were significant differences between the statute considered in *Kolender* and the one considered in *Caswell*. *Caswell* concluded the portion of the statute considered in *Kolender* which was fatal to the adequate-guidelines test stated the loitering individual was required to provide "credible and reliable" identification and his failure to provide credible and reliable identification made him guilty of a crime. *Caswell* stated:

"Because the statute [considered in *Kolender*], even with the judicial gloss, contained 'no standard for determining what a suspect ha[d] to do to satisfy the requirement to provide a "credible and reliable" identification' (*Kolender, supra*, 461 U.S. at p. 358 [75 L.Ed.2d at p. 909]), the *Kolender* court concluded that the provision effectively made the very definition of the crime subject to the personal standards of each individual law enforcement officer.

"By contrast, section 647(d) vests no such discretion with law enforcement. The essence of this provision is loitering in a certain place while entertaining a specified criminal intent. . . . A person is subject to arrest under the provision only if his or her conduct gives rise to probable cause to believe that he or she is loitering in or about a public restroom with the proscribed illicit intent." (*Caswell, supra*, 46 Cal.3d at p. 394.)

The constitutional vice of the statute considered in *Kolender* was that the definition of the crime—whether the identification produced was credible and reliable—was undefined and based entirely on the police officer's judgment of what would be deemed credible and reliable. In contrast, neither the statute considered in *Caswell* nor section 653.22 makes police the final arbiters of whether the crime has been committed. Instead, section 653.22 defines the elements of the offense, and it is for the trier of fact to determine whether the crime has been committed.

Pulliam argues that because section 653.22, subdivision (b) lists actions which by themselves are innocuous, the statute permits officers to arrest people for engaging in the listed actions even though they lack criminal intent.[4] Pulliam's argument is based on the assertion that section 653.22, subdivision (b) criminalizes the listed conduct. Pulliam misconstrues the statute. Section 653.22, subdivision (a) states the elements of the crime. Subdivision (b) of that section merely lists conduct that guides but is not dispositive of (§ 653.22, subd. (c)) whether the loiterer possessed the requisite intent. Pulliam does not convince us there is any constitutional vice to a statutory listing of circumstances which may be considered in deciding whether a loiterer has the requisite intent, particularly because of *Caswell*'s statement that it can "readily envision numerous situations where noncriminal conduct may legitimately give rise to probable cause to believe an individual is in violation of [the loitering statute]." (*Caswell, supra,* 46 Cal.3d at p. 395.)

Pulliam's claim that inclusion of the subdivision (b) criteria in section 653.22 undermines the constitutionality of that statute is also inconsistent with *Caswell*'s statement that, although a listing of criteria is not required, a statute's "potential vagueness may be ameliorated by the express enumeration of observable behavior which can serve to guide police discretion [and] . . . if observed, give rise to a legitimate inference of the prohibited intent

---

[4]Pulliam posits several hypothetical scenarios of conduct listed in section 653.22, subdivision (b) to argue the conduct subjects innocent persons to arrest: motorists trying to flag down passing vehicles for roadside assistance; students beckoning to passersby to advertise their car wash; politicians waving hello to passing motorists. At most, these scenarios are "generated by the possibility of overzealousness on the part of the arresting officer and not vagueness in the criminal statute." (*Caswell, supra,* 46 Cal.3d at p. 398.) *Caswell* earlier noted that the argument that too much discretion is conferred on police was flawed: " 'The concern . . . is that "policemen, prosecutors, and juries" will arbitrarily disregard the definitions [of crimes] and also the rules of probable cause and proof. If this is, indeed, a constitutionally significant flaw, then it is a flaw which would invalidate not only [the loitering statute] but many other criminal statutes as well. We consider such a conclusion unreasonable and unrealistic. The defendants' concerns can be adequately dealt with in the course of prosecution of individual cases on their individual facts; these concerns are not an adequate predicate for finding that the statute is invalid on its face.' " (*Caswell, supra,* 46 Cal.3d at pp. 396-397.)

. . . ." (*Caswell, supra,* 46 Cal.3d at pp. 400-401, fn. omitted.) Other states have held that statutes containing similar criteria satisfy due process requirements for adequate notice and adequate guidelines. (See *People* v. *Smith* (1978) 44 N.Y.2d 613 [407 N.Y.S.2d 462, 378 N.E.2d 1032] [rejecting claim that loitering with intent to commit prostitution law lacked adequate guidelines because listing of observable behavior limited police discretion]; *City of Akron* v. *Massey* (1978) 56 Ohio Misc. 22 [10 Ohio Op. 3d 216, 381 N.E.2d 1362] [same]; *City of Seattle* v. *Jones* (1971) 79 Wn.2d 626 [488 P.2d 750] [rejecting vagueness attack on "loitering with intent to commit prostitution" law, which contained nonexclusive list of observable behavior]; *Matter of D.* (1976) 27 Or.App. 861 [557 P.2d 687] [same]; *Short* v. *City of Birmingham* (Ala. Crim. App. 1981) 393 So.2d 518 ["loitering with intent to commit prostitution" statute containing nonexclusive list of observable behavior held to provide "adequate guidelines" limiting police discretion].)

The holding and reasoning of *Caswell,* which are consistent with the weight of authority in other states,[5] convince us section 653.22 gives adequate police enforcement guidelines as well as adequate notice of proscribed conduct to satisfy due process requirements.

## THE OVERBREADTH CLAIM

Pulliam alternatively argues section 653.22 is facially overbroad. A claim of overbreadth addresses statutes that punish both constitutionally protected conduct, such as conduct protected by the First Amendment, and which may validly be prohibited. (*People* v. *Antoine* (1996) 48

---

[5]A few courts have struck down statutes prohibiting "loitering for prostitution". (See, e.g., *Brown* v. *Municipality of Anchorage* (Alaska 1978) 584 P.2d 35; *Profit* v. *City of Tulsa* (Okla. Crim. App. 1980) 617 P.2d 250.) However, the statutes in those states contained language different from that contained in section 653.22, and these linguistic differences led the courts of those states to interpret their statutes as permitting conviction even though the loiterer had no intent to commit prostitution. The respective statutes in *Profit* and *Brown* prohibited loitering "under circumstances manifesting the purpose" of prostitution and listed, as a circumstance to be considered on whether the purpose was manifested, that the loiterer was a known prostitute. (*Profit, supra,* at p. 251; *Brown, supra,* at p. 36.) *Profit* construed the statute as permitting conviction if a known prostitute loitered, even without intent to commit prostitution, because being a known prostitute was a circumstance which could "control whether the ordinance has been violated. In· this sense, 'status' becomes . . . an element of the offense." (*Profit, supra,* at p. 251.) *Profit* invalidated its statute because it concluded the statute permitted conviction based merely on the defendant's status rather than on her intent while loitering. (*Ibid.*) The same reasoning led *Brown* to invalidate its statute. (*Brown, supra,* 584 P.2d at pp. 37-38.) We do not second-guess the construction placed by those courts on their respective statutes, although other courts with similarly worded statutes have interpreted their statutes as including the specific intent requirement. (See *City of Milwaukee* v. *Wilson* (1980) 96 Wis.2d 11 [291 N.W.2d 452].) It is sufficient for our purposes that section 653.22 does require the loiterer to have the specific intent to commit prostitution.

Cal.App.4th 489, 495 [56 Cal.Rptr.2d 530].) When a statute as written "sweeps in a substantial amount of constitutionally protected conduct . . . a more stringent vagueness test applies. [Citations.]" (*Tobe* v. *City of Santa Ana, supra,* 9 Cal.4th at p. 1109.) A statute that on its face criminalizes both protected and unprotected conduct must narrowly be drawn to reach only unprotected conduct and to avoid penalizing protected speech. (*People* v. *Mirmirani* (1981) 30 Cal.3d 375, 383 & fn. 7 [178 Cal.Rptr. 792, 636 P.2d 1130].)

Pulliam asserts that the more stringent overbreadth test applies because section 653.22 "reaches a substantial amount of constitutionally protected conduct." (*Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489, 494 [102 S.Ct. 1186, 1191, 71 L.Ed.2d 362].) Pulliam argues section 653.22 criminalizes activities protected by the First Amendment because conviction under subdivision (b) of that section is possible if a person (1) loiters while repeatedly beckoning to, or engaging in conversations with, passersby to promote a political candidate; or (2) hails, engages, or attempts to engage, drivers of passing vehicles for that purpose.

 We do not agree that section 653.22 criminalizes the conduct listed in its subdivision (b), and hence criminalizes a substantial amount of constitutionally protected conduct. The statute prohibits loitering with the intent to commit prostitution; it does not prohibit protected speech.[6] A statute may properly criminalize certain forms of conduct even though that conduct may be intertwined with speech or association. As the court explained in *Cox* v. *Louisiana* (1965) 379 U.S. 559, 563 [85 S.Ct. 476, 480, 13 L.Ed.2d 487]: "The examples are many of the application by this Court of the principle that certain forms of conduct mixed with speech may be regulated or prohibited. The most classic of these was pointed out long ago by Mr. Justice Holmes: 'The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.' [Quoting *Schennk* v. *United States* (1919) 249 U.S. 47, 52 [39 S.Ct. 247, 249, 63 L.Ed. 470].] A man may be punished for encouraging the commission of a crime, [citation], or for uttering 'fighting words,' [citation] . . . . These authorities make it clear . . . that 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of

---

[6]For this reason Pulliam's reliance on *Blair* v. *Shanahan* (N.D.Cal. 1991) 775 F.Supp. 1315 is misplaced. The *Blair* court invalidated a statute that prohibited begging in public places, because, *Blair* concluded, begging in public places was a form of protected expression entitled to First Amendment protection. (*Id.* at pp. 1322-1324.) Even assuming *Blair* was correctly decided (but see *People* v. *Zimmerman* (1993) 15 Cal.App.4th Supp. 7, 12-14 [19 Cal.Rptr.2d 486]), *Blair* has no application because loitering to commit prostitution is not a form of expression protected by the First Amendment.

language, either spoken, written, or printed.' [Quoting *Giboney* v. *Empire Storage & Ice Co.* (1949) 336 U.S. 490, 502 [69 S.Ct. 684, 691, 93 L.Ed. 834].]"

Criminal laws penalize conduct. If the conduct is permissibly prohibited under the state and federal Constitutions, the fact that the conduct may peripherally involve speech or association does not cloak it with constitutional protections that invalidate the criminal statute prohibiting the conduct. As aptly stated by *People* v. *Smith, supra*, 407 N.Y.S.2d at page 468: "That defendant may have employed language and the public streets to ply her trade does not imbue her conduct with the full panoply of First Amendment protections. On the contrary, the statute, by its terms, is limited to conduct 'for the purpose of prostitution . . .' —behavior which has never been a form of constitutionally protected free speech. [Citations.]"

Because section 653.22 criminalizes the conduct of loitering with intent to commit prostitution, which may constitutionally be prohibited, and does not on its face prohibit "a substantial amount of constitutionally protected conduct," section 653.22 is not overbroad.

### DISPOSITION

The judgment is affirmed.

Work, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 22, 1998. Mosk, J., was of the opinion that the petition should be granted.