[No. F044370. Fifth Dist. Mar. 17, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID JOHN HAGEDORN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Alfons G. Watner, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Brian Alvarez and Connie A. Proctor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ARDAIZ, P. J.**—On July 1, 2002, appellant David John Hagedorn entered a Money Mart in Ridgecrest and used a copy of Arthur Pettet's Social Security card and birth certificate, without Pettet's permission, in an attempt to cash a check. Although made payable to Pettet, the check constituted payment for work performed by appellant under Pettet's name. As a result, a jury

convicted appellant of second degree burglary (Pen. Code,[1] § 460, subd. (b); count 1) and unauthorized use of personal identifying information (§ 530.5; count 2), and he was sentenced to three years in prison and ordered to pay victim restitution and a restitution fine.[2] He now appeals, claiming that section 530.5 violates due process as applied to him; that there is insufficient evidence to support his convictions once the statute is properly construed; and that sentencing error occurred. In the published portion of this opinion, we reject his contentions concerning section 530.5. In the unpublished portion, we reject his claims of sentencing error.

<u>DISCUSSION</u>

I

**SECTION 530.5**

Although section 530.5 has been amended several times since its enactment, at all times pertinent to this case, subdivision (a) has provided:[3] "Every person who willfully obtains personal identifying information, as defined in subdivision (b), of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, or medical information in the name of the other person without the consent of that person, is guilty of a public offense, and upon conviction therefor, shall be punished either by imprisonment in a county jail not to exceed one year, a fine not to exceed one thousand dollars ($1,000), or both that imprisonment and fine, or by imprisonment in the state prison, a fine not to exceed ten thousand dollars ($10,000), or both that imprisonment and fine."[4] Appellant's jury was instructed accordingly, pursuant to CALJIC No. 15.60, and was also told that the necessary mental state for the offense charged in count 2 was "use of personal identifying information for an unlawful purpose, specifically the obtaining of or attempted obtaining of goods, credit, or services without the consent of the other person."

Appellant does not challenge the instruction per se, but contends that, as applied to him, section 530.5 violates due process because it did not give him fair warning that he was committing a crime by cashing a check, albeit in the

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Sentence in this case was ordered to run concurrent to that in another matter.

[3] References to undesignated subdivisions are to section 530.5.

[4] Included within subdivision (b)'s definition of "personal identifying information" are an individual person's name and social security number. The subdivision was amended after the date of the instant offenses to encompass a much wider array of information, including that contained in a birth certificate.

name of another, for work he himself performed and without causing harm or loss to the issuer of the check, the check cashing store, or the person whose identity he used. He says an analysis of the statute shows that the only conduct clearly covered, and for which he was given fair warning, was conduct committed with an intent to defraud; hence, we must interpret the statute to include such a requirement, and appellant's jury should have been instructed accordingly.[5] Appellant points specifically to the statutory phrases "uses . . . for any unlawful purpose" and "in the name of the other person," claims an ambiguity exists, and invokes the rule of lenity.

■ " ' "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]" ' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) " '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212 [120 Cal.Rptr.2d 783, 47 P.3d 629].)

■ In our view, subdivision (a) clearly and unambiguously does *not* require an intent to defraud. ■ In reaching this conclusion, "[w]e do not . . . consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) We also "give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.]"

---

[5] CALJIC No. 15.26 defines intent to defraud as "[a]n intent to deceive another person for the purpose of gaining some material advantage over that person or to induce that person to part with property or to alter that person's position to [his] [her] [its] injury or risk, and to accomplish that purpose by some false statement, false representation of fact, wrongful concealment or suppression of truth, or by any other artifice or act designed to deceive."

(*People v. Canty, supra,* 32 Cal.4th at p. 1276.) " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' [Citation.]" (*People v. Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622]; see *People v. Silva* (2003) 114 Cal.App.4th 122, 129 [7 Cal.Rptr.3d 473].) Moreover, " ' "[f]ailure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." ' [Citation.]" (*People v. Sainz* (1999) 74 Cal.App.4th 565, 573 [88 Cal.Rptr.2d 203].)

Contrary to appellant's assertion, section 530.5, subdivision (d) was not enacted as part of the original statute, but was added by Statutes 2002, chapter 254, section 1. It provides: "Every person who, *with the intent to defraud*, acquires, transfers, or retains possession of the personal identifying information, as defined in subdivision (b), of another person is guilty of a public offense, and upon conviction therefor, shall be punished by imprisonment in a county jail not to exceed one year, or a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine." (Italics added.) Obviously, if the Legislature meant for subdivision (a) to require an intent to defraud, it knew how to so provide. (See *In re Ivan J.* (2001) 88 Cal.App.4th 27, 30 [105 Cal.Rptr.2d 382].) Instead, it is apparent, from a comparison of the language and punishment contained in the two subdivisions, that the Legislature chose to treat use of personal identifying information, as opposed to mere acquisition or possession, as the more serious offense and worthy of a more expansive scope.

█ Because subdivision (a) is not ambiguous, the rule of lenity does not apply. Under that rule, "language in a penal statute that truly is susceptible of more than one reasonable construction in meaning or application ordinarily is construed in the manner that is more favorable to the defendant. [Citation.] Nonetheless, ' "the rule of lenity applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." . . . "The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner in impracticable." [¶] Thus, although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in a defendant's favor it if can fairly discern a contrary legislative intent.' [Citations.]" (*People v. Canty, supra,* 32 Cal.4th at p. 1277; accord, *Moskal v. United States* (1990) 498 U.S. 103, 107–108 [112 L.Ed.2d 449, 111 S.Ct. 461].)

■ Appellant contends that the ambiguity he alleges *is* egregious when considered in the context of the statute's legislative history, and that this history demonstrates that "what was considered was an act that was done with the intent to defraud by fraudulently creating a financial or other loss to either the supplier of the goods, credit, or services and/or the identity theft victim." Courts generally resort to legislative history to *resolve* ambiguities, not to *create* them. Nevertheless, we recognize that " 'language that appears unambiguous on its face may be shown to have a latent ambiguity.' [Citation.]" (*People v. Townsend* (1998) 62 Cal.App.4th 1390, 1395 [73 Cal.Rptr.2d 438].) Thus, "it is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the Legislature did not intend. To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]" (*In re Michele D.* (2002) 29 Cal.4th 600, 606 [128 Cal.Rptr.2d 92, 59 P.3d 164].) In such circumstances, "[w]e . . . apply the principles that pertain where statutory ambiguity exists, adopting the interpretation that leads to a more reasonable result. [Citation.] It is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation. [Citations.]" (*People v. Canty, supra,* 32 Cal.4th at p. 1277.)

In our view, the legislative history of section 530.5 does not assist appellant. It is true the bill's supporters reportedly argued "that the problem of 'identity theft' is growing due to the claim that stealing a person's identity is 'easy' because a *defrauder* must obtain only a consumer's first or last name and a Social Security number before completing a *fraudulent* credit application." (Assem. Com. on Banking and Finance, Analysis of Assem. Bill No. 156 (1997–1998 Reg. Sess.) as amended Mar. 31, 1997, p. 2, at <http:// www.legi nfo.ca.gov /pub/97-9 8/bill/as m/ab_0151-0200/ ab_156_cfa_19970404_155153_asm_comm.html> [as of Mar. 17, 2005], italics added.) It is also true that the bill's author reportedly referred to an identity thief as a "defrauder," and used the example of a criminal who walks into a store that provides instant credit, fills out a credit application using someone else's identifying information, opens an account, charges thousands of dollars of merchandise, and never pays a dime. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 156 (1997–1998 Reg. Sess.) as amended July 3, 1997, p. 4, at <http://www.leginfo.ca.gov/pub/97-98/bill/asm/ab_0151-0200/ab_156_cfa_19970715_170405_sen_comm.html> [as of Mar. 17, 2005].) However, the fact that the bill's author and supporters may have used a shorthand term to describe someone who makes unauthorized use of personal identifying information of another, or "[t]he fact that the Legislature may not have considered every factual permutation of [identity theft], including [conduct which purportedly causes no financial harm or loss], does not

mean the Legislature did not intend for the statute to reach that conduct." (*In re Michelle D., supra,* 29 Cal.4th at p. 606.) In our view, the fact that the legislative history refers to what might be the more common form of identity theft does not, in any way, suggest the Legislature's intent in enacting subdivision (a) was to reach *only* conduct involving an intent to defraud or which causes financial loss or harm.

■ "[I]t is beyond question that the Legislature may, and has, defined crimes and punishments in which causation analysis plays no practical part. For example, if a defendant has possessed contraband, burglarized a premises or battered another, criminal punishment is imposed to deter socially intolerable conduct regardless of any injury which may have been caused by the act. [Citation.]" (*People v. Jackson* (2000) 77 Cal.App.4th 574, 578 [91 Cal.Rptr.2d 805].) In light of the indisputable evil to be remedied with respect to identity theft, the Legislature rationally appears to have concluded that willfulness, when coupled with use for an unlawful purpose, provides a sufficient mens rea for the offense, and that no injurious intent or result is required.[6] (See *People v. Rathert* (2000) 24 Cal.4th 200, 205–206 [99 Cal.Rptr.2d 779, 6 P.3d 700].) ■ "The judiciary ordinarily has no power to insert in a statute an element the Legislature has omitted [citation]" (*People v. Superior Court (Aishman)* (1995) 10 Cal.4th 735, 740–741 [42 Cal.Rptr.2d 377, 896 P.2d 1387]); where, as here, the statute has an appropriate mens rea requirement, "no reason appears . . . to warrant departure from this rule." (*Ibid.*; *People v. Valenzuela* (2001) 92 Cal.App.4th 768, 778 [112 Cal.Rptr.2d 209].)

To summarize, we conclude that subdivision (a) of section 530.5 does not require an intent to defraud. Does this, then, render the statute unconstitutionally vague as applied to appellant? We conclude the answer is no.

■ "An as applied challenge [to the constitutional validity of a statute] may seek . . . relief from a specific application of a facially valid statute . . . to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute . . . has been applied . . . . It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. [Citations.] When a criminal defendant claims that a facially valid statute . . . has been applied in a constitutionally impermissible

---

[6] "The word 'willfully' as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute." (*People v. Lewis* (2004) 120 Cal.App.4th 837, 852 [15 Cal.Rptr.3d 891].) "It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. 1.)

manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) "When, as here, the contention is that a state rule violates due process, the defendant must show that the rule 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' [Citations.] Fundamental principles of justice are those that ' " 'lie at the base of our civil and political institutions' " ' and ' "define 'the community's sense of fair play and decency.' " ' [Citation.]" (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 11 [124 Cal.Rptr.2d 202, 52 P.3d 129].)

■ "The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of 'life, liberty, or property without due process of law,' as assured by both the federal Constitution [citation] and the California Constitution [citation]. Under both Constitutions, due process of law in this context requires two elements: a criminal statute must ' "be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." ' [Citations.]

■ "We evaluate the specificity of [subdivision (a) of section 530.5] according to the following standards: ' "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' [Citations.]

"The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567–568 [20 Cal.Rptr.2d 341, 853 P.2d 507].)

■ With respect to the determination whether a statute imparts fair warning, the United States Supreme Court has stated: "There are three related

manifestation's of the fair warning requirement. First, the vagueness doctrine bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. [Citations.] Second, . . . the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. [Citations.] Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute [citations], due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope [citations]. In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." (*United States v. Lanier* (1997) 520 U.S. 259, 266 [137 L.Ed.2d 432, 117 S.Ct. 1219].)

■ "It is impossible, given the complexities of our language and the variability of human conduct, to achieve perfect clarity in criminal statutes. Reasonable specificity exists if the statutory language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understandings and practices.' [Citations.]" (*People v. Basuta* (2001) 94 Cal.App.4th 370, 397 [114 Cal.Rptr.2d 285].) " '[S]tatutes are not automatically invalidated as impermissibly vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. [Citation.]' [Citation.]" (*People v. Serrano* (1992) 11 Cal.App.4th 1672, 1675–1676 [15 Cal.Rptr.2d 305].) Moreover, " '[o]ffenders cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds [citation].' [Citation.]" (*People v. Ballard* (1988) 203 Cal.App.3d 311, 317 [249 Cal.Rptr. 806].)

■ We find nothing vague about subdivision (a) as applied to appellant. Standing alone, the phrase "uses . . . for any unlawful purpose" might be considered unconstitutionally vague under particular circumstances, because persons of common intelligence might have to guess at its meaning and could differ as to its application. However, the statute goes on to define "uses . . . for any unlawful purpose" as including the obtaining, or attempted obtaining, of "credit, goods, services, or medical information in the name of [an]other person without the consent of that person . . . ."

Appellant contends "[t]he evidence is clear that [he] did not obtain or attempt [to obtain] credit, goods, or medical information in the name of Arthur Pettet," and that "[t]he only possible application of the statute to [him] lies in whether his attempt to obtain pay for his employment was use of personal identifying information for an unlawful purpose as an attempt to

obtain services in the name of another person." He argues that, under his circumstances, subdivision (a) is vague with respect to the meaning of "uses . . . for any unlawful purpose" and "in the name of the other person." He contends that, "[a]t the most basic level, one could reasonably deduce that since the purpose of the use was not unlawful, i.e., to collect payment for work you had performed, the use itself could not be unlawful. The statute clearly states 'use for an unlawful purpose;' not unlawful use. [¶] One could further reasonably deduce that for the use to be for an unlawful purpose, 'in the name of another' would not only have to include receipt of the sought-after goods, services or credit but also the commensurate creation of a loss by obligation owed by an 'another.' [*Sic.*]"

■ Appellant's arguments not only misquote the statute, they miss the mark. It is indisputable that a check cashing business such as Money Mart provides a service, for which it receives a fee. (See Civ. Code, § 1789.35; *People v. Simon* (1964) 227 Cal.App.2d 849, 851 [39 Cal.Rptr. 138].) Appellant sought to have cashed a paycheck which, while constituting payment for work he himself performed, was made payable to Arthur Pettet. In order to obtain the check cashing service, appellant used Pettet's personal identifying information, the nature of which was such that it could not have been acquired unintentionally. Clearly, then, appellant "willfully obtain[ed] personal identifying information . . . of another person, and use[d] that information for [the] unlawful purpose [of] . . . attempt[ing] to obtain . . . services . . . in the name of the other person without the consent of that person," in violation of subdivision (a).[7] Thus, appellant's conduct was clearly covered by the statute, the terms of which gave him fair warning that his conduct was forbidden. By setting out concrete examples of what constituted an unlawful purpose, the plain language of subdivision (a) criminalized appellant's conduct and ameliorated any potential vagueness. (See *People v. Pulliam* (1998) 62 Cal.App.4th 1430, 1436 [73 Cal.Rptr.2d 371].) To put it in more specific terms, the statute provides that an "unlawful purpose" includes the conduct here in question. ■ What the statute contemplates and proscribes is using someone else's personal identifying information, without consent and for purposes that include obtaining credit or goods. It does not require an intent to defraud the person whose identity is assumed. The wording of the statute contemplates misleading the person or entity from whom the goods, services, etc. are obtained.

■ Whether appellant realized he was violating the law does not affect subdivision (a)'s constitutionality as applied to him. "No person of ordinary intelligence would be left guessing as to the meaning of" the statutory

---

[7] We leave for another day the question whether receipt of the paycheck itself falls within the purview of the statute, or whether the process of cashing a check involves obtaining or attempting to obtain credit within subdivision (a)'s provisions.

language. (*People v. Truong* (2001) 90 Cal.App.4th 887, 899 [108 Cal.Rptr.2d 904].) "[W]e 'require citizens to apprise themselves . . . of statutory language . . . .' [Citations.]" (*People v. Heitzman* (1994) 9 Cal.4th 189, 200 [37 Cal.Rptr.2d 236, 886 P.2d 1229].) They are presumed to know the law (*People ex rel. McKune v. Weller* (1858) 11 Cal. 49, 65); ignorance of the law is no excuse for a violation thereof (*People v. Mayer* (2003) 108 Cal.App.4th 403, 413 [133 Cal.Rptr.2d 454]), nor does it mean the statute failed to give fair warning of what it required or forbade. Because the statutory language is sufficiently clear, we will not construe subdivision (a) to require an intent to defraud as a prerequisite for a conviction under that portion of section 530.5. Accordingly, appellant's jury was properly instructed on the elements of the offense charged in count 2 of the information.

In light of our conclusion that a violation of section 530.5, subdivision (a) does not require an intent to defraud, we reject appellant's related claims that his convictions were unsupported by substantial evidence.[8] Appellant implicitly concedes there was sufficient evidence of both charged offenses, absent an intent-to-defraud requirement with respect to section 530.5. We have examined the evidence in light of settled principles of appellate review (see, e.g., *Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Alvarez* (1996) 14 Cal.4th 155, 224 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]); it is sufficient to sustain the convictions on both counts.

## II[*]

### IMPOSITION OF UPPER TERMS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8] With respect to count 1, the jury was instructed: "Now the defendant is accused in count one of having committed the crime of burglary, a violation of Section 459 of the Penal Code. Every person who enters any building with the specific intent to commit the crime of unauthorized use of personal identifying information of another person is guilty of the crime of burglary, in violation of Penal Code Section 459. [¶] . . . [¶] In order to prove this crime, each of the following elements must be proved: One, a person entered a building; and two, at the time of the entry that person had the specific intent to commit the crime of unauthorized use of the personal identifying information of another person."

[*]See footnote, *ante*, page 734.

## DISPOSITION

The judgment is affirmed. The trial court is directed to cause to be prepared a corrected sentencing minute order, showing sentence on count 1 stayed pursuant to section 654, and to transmit a certified copy of same to the appropriate authorities.

Dibiaso, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 2005. Baxter, J., and Brown, J., did not participate therein.