[No. F061153. Fifth Dist. July 21, 2011.]

In re ROLANDO S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROLANDO S., Defendant and Appellant.

COUNSEL

Law Office of Jeffrey T. Hammerschmidt, Hammerschmidt Broughton Law Corporation, Jeffrey T. Hammerschmidt, Mark A. Broughton and Laura M. Bragg for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FRANSON, J.**—Appellant Rolando S. challenges the juvenile court's finding that he committed identity theft under Penal Code section 530.5, subdivision (a)[1] (hereafter section 530.5(a)) when he accessed the account of S.W. (the victim) on a social media Web site (Facebook), altered her profile and posted obscene messages and comments purportedly as the victim from her account in April 2010. Appellant argues his conduct fails to satisfy the statutory elements of the crime. For the reasons discussed below, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was one of several recipients of an unsolicited text message providing the password to the victim's e-mail account. Appellant used the victim's e-mail password and account to gain access to her Facebook account, where he posted, in her name, prurient messages on two of her male friends' pages (walls) and altered her profile description in a vulgar manner.[2] The victim found out about the messages and informed her father, who removed the messages from her account and later called the police.

Appellant admitted to the police that he posted the messages from the victim's Facebook account and altered her profile. A juvenile petition was filed alleging one count of violating section 530.5(a) (willfully obtaining

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Appellant posted, as the victim, on a male classmate's wall: "I want to stick your dick in my mouth and then in my pussy and fuck me really hard and cum on my face." On another male classmate's wall he posted: "When we were dating we should have had sex. I always thought you had a cute dick, maybe we can have sex sometime." On the victim's profile description, appellant posted: "Hey, Face Bookers, [*sic*] I'm [S.], a junior in high school and college, 17 years young, I want to be a pediatrician but I'm not sure where I want to go to college yet. I have high standards for myself and plan to meet them all. I love to suck dick."

personal identifying information and using it for an unlawful purpose). After a contested jurisdiction hearing, the juvenile court found beyond a reasonable doubt that appellant had committed the crime charged and sustained the petition.

At the disposition hearing, the juvenile court denied appellant's motion to reduce the crime from a felony to a misdemeanor, without prejudice. The court noted its concern with the short timespan between this offense and the disposition of a prior offense—assault with a deadly weapon (a car), where appellant had driven his car at three girls with the intent of scaring them. The court found the maximum confinement time for the offense to be three years, and found the aggregated maximum confinement time to be three years three months.[3] The court ordered appellant committed to the Kings County Juvenile Academy Alpha Program for 90 days to a year, and put him on probation.

## DISCUSSION

Section 530.5(a) states in pertinent part: "Every person who willfully obtains personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense . . . ."

█ The offense is a "wobbler," punishable either as a misdemeanor or a felony. (§ 530.5(a).) Section 530.55, subdivision (b) includes "unique electronic data" as "personal identifying information."

"[T]o be guilty under section 530.5, subdivision (a), the defendant must (1) willfully obtain personal identifying information of another person, and (2) use the identifying information for an unlawful purpose without the person's consent." (*People v. Tillotson* (2007) 157 Cal.App.4th 517, 533 [69 Cal.Rptr.3d 42].) The facts here are not in dispute. Appellant asserts the facts fail to satisfy the elements of section 530.5(a). We disagree.

A. *Appellant Willfully Obtained the Victim's E-mail Account Password*

Appellant essentially argues that because he made no effort to obtain the password, instead passively receiving the text message on his cell phone "without his prior knowledge or consent," he did not "willfully" obtain the

---

[3] Appellant had a prior petition sustained on charges of reckless driving (Veh. Code, § 23103, subd. (a)), where he had driven his car at three girls in the school parking lot, but stopped abruptly several feet away from them in an attempt to scare them. The juvenile court had disposed of his prior petition approximately two weeks prior to appellant's current offense.

victim's e-mail account password for purposes of the statute. Respondent focuses its argument on asserting that appellant "obtained" the password, and evidenced his willfulness by using the password, rather than deleting it when he received it. We conclude appellant willfully obtained the victim's password when he chose to remember the password from the text message, and later affirmatively used the password to gain access to the victim's electronic accounts.

■ "Willfully" is defined in section 7, subdivision 1: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to." In other words, "[t]he word 'willfully' as generally used in the law is a synonym for 'intentionally,' " (*People v. Lewis* (2004) 120 Cal.App.4th 837, 852 [15 Cal.Rptr.3d 891]), and " '. . . implies no evil intent; " 'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' [Citation.]" ' [Citations.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 85 [104 Cal.Rptr.2d 738, 18 P.3d 660].) ■ Appellant freely accepted the password information provided in the text message. While the text message itself was unsolicited, no evidence suggests appellant was forced to remember the password or otherwise keep a record of it so that he could use it later, as he admitted to doing. On the record before us, we conclude that appellant willfully obtained the password information from the text message, knowing that he was continuing to possess the password, intending to do so, and was a free agent when securing the password for his future use.

Moreover, appellant used the e-mail password he willfully obtained from the text message to then willfully obtain the victim's Facebook account password. Facebook accounts are linked to a user's e-mail account. If the user forgets his or her Facebook password, he or she can regain access to his or her Facebook account by having Facebook e-mail a verification procedure to the user's e-mail address. By completing the Facebook verification procedure, the user is directed to a Facebook page where he or she can then reset his or her Facebook password by entering a new one, which then logs him or her back into the Facebook account with the new password.

The victim's father testified the victim's Facebook password was being changed dozens of times over several weeks and it was only after they deleted her e-mail account that they were able to regain control over her Facebook account. Appellant admitted to Officer Lucio that he used the e-mail account password he received from the text message to gain access to the victim's Facebook account. By resetting the victim's Facebook account password himself using the above described process, appellant would have been able to log in to her account and pose as the victim as he posted on her

friends' walls and on her profile. The record makes no indication appellant received the victim's Facebook account password in another manner. It is reasonable to infer he used this process of resetting the password through the victim's e-mail account to gain access to the victim's Facebook account. Not only did appellant willfully obtain the e-mail password from the text message, he also willfully obtained the Facebook account password by purposely using the e-mail account as a vehicle to alter the Facebook account password.

## B. *Appellant Used the Victim's Information for an Unlawful Purpose*

Appellant next contends his conduct fails to satisfy the second element of section 530.5(a), that he "use[d] [the victim's] information for any unlawful purpose." He argues that at most he "possibly defamed" the victim, but asserts that civil torts do not constitute an "unlawful purpose" for purposes of the statute. Respondent argues appellant's conduct was unlawful under section 647.6, subdivision (a)(1) (annoying or molesting a child). In the alternative, respondent contends that civil torts constitute an unlawful purpose, and appellant's conduct amounted to libel under Civil Code section 45. We disagree with respondent that appellant's conduct constituted unlawful behavior under section 647.6, subdivision (a)(1). However, we hold that intentional civil torts, such as libel, constitute an "unlawful purpose" for purposes of section 530.5(a), and affirm the judgment.

### 1. *Appellant's Conduct Was Not Unlawful Under Section 647.6*

■ Section 647.6, subdivision (a)(1) makes it a misdemeanor when a person, "annoys or molests any child under 18 years of age." Our Supreme Court has held that the statute requires "(1) conduct a ' "normal person would unhesitatingly be irritated by" ' [citation], and (2) conduct ' "motivated by an unnatural or abnormal sexual interest" ' in the victim [citation]." (*People v. Lopez* (1998) 19 Cal.4th 282, 289 [79 Cal.Rptr.2d 195, 965 P.2d 713]; see *In re Gladys R.* (1970) 1 Cal.3d 855, 867–868 [83 Cal.Rptr. 671, 464 P.2d 127].) We agree with appellant that the facts fail to demonstrate the prosecution satisfied the second element.

In *People v. Maurer* (1995) 32 Cal.App.4th 1121 [38 Cal.Rptr.2d 335], the appellate court reversed a former high school music teacher's two section 647.6 convictions because of instructional error. The trial court had instructed the jury that the defendant's acts must have been motivated by an unnatural or abnormal sexual interest in the victim, but also instructed the jury generally that motive was not an element of the crime charged and did not have to be shown. (32 Cal.App.4th at p. 1125.) Evidence supporting the charges included the victim's testimony and those of her classmates that the defendant would frequently make comments or jokes to the whole class about

the subject of sex. The victim also described specific conversations and comments between her and the defendant that were sexually explicit in nature. The appellate court found the instructional error prejudicial, reasoning that the victim and the defendant freely discussed sexual and nonsexual matters, and that although the defendant and the victim "were very close and spent a lot of time privately, yet defendant never touched her in a sexual manner and never tried to seduce her." (*Id.* at p. 1131.) The appellate court concluded the jury "could have determined that defendant's conduct was motivated by other than an unnatural or abnormal sexual interest in [the victim]." (*Ibid.*)

Here, appellant posted three sexually explicit comments from the victim's account. The record makes no indication he attempted to contact the victim previously, or that he had prior encounters with her that would indicate he was motivated by his sexual interest, abnormal or otherwise. We conclude there is insufficient evidence to support the prosecution's assertion that appellant's conduct was motivated by an unnatural or abnormal sexual interest in the victim and therefore unlawful under section 647.6.

### 2. *"Any Unlawful Purpose" Includes Causes of Action Under Civil Tort Law*

Appellant contends the Legislature intended to limit "any unlawful purpose" to strictly criminal conduct. We disagree.

█ When construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. (*People v. Hagedorn* (2005) 127 Cal.App.4th 734, 741 [25 Cal.Rptr.3d 879] (*Hagedorn*).) "We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citations.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) Here, appellant raises an ambiguity as to the statute's application with respect to a defendant's use of the victim's personal identifying information for "any unlawful purpose." (§ 530.5(a).)

The California Legislature added section 530.5 to the Penal Code in 1997. (Stats. 1997, ch. 768, § 6, p. 5205, .operative Jan. 1, 1998.) The following year, the Legislature passed an amendment which expanded both the scope of, and the penalty for, the offense. It was at this time that "any unlawful purpose" was added. (Stats. 1998, ch. 488, § 1, p. 3531.) Appellant limits his analysis of legislative history to the Legislative Counsel's Digest, and contends the purpose of adding "for any unlawful purpose" was to "protect victims of identity theft."

While the subdivision which provided victim relief was also added at the same time in 1998,[4] the Senate Committee report for the bill introducing the amendment makes clear that the purpose of the "any unlawful purpose" language was to broaden the scope of punishable conduct, stating, "[t]he purposes of this bill are to increase the penalty for identity theft; *to expand the crime of identity theft to include use of personal information for any unlawful purpose*; and to provide a mechanism in criminal court for an identity theft victim to clear his or her name." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1374 (1997–1998 Reg. Sess.) as amended Mar. 12, 1998, italics added, at <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_1351-1400/sb_1374_cfa_19980415_080916_sen_comm.html> [as of July 21, 2011].) The bill's author explained, "SB 1374 will also specify that the use of another's identity for any unlawful purpose falls within the penalty provisions." (*Ibid.*, original underscoring.) The Assembly floor summary separated out and summarized the various elements of the proposed amendment, and made clear that adding "any unlawful purpose" was a stand-alone objective to "[e]xpand[] personal identity theft to include willfully obtaining another person's information for 'any unlawful purpose.' " (Office of Assem. Floor Analyses, 3d reading of Sen. Bill No. 1374 (1997–1998 Reg. Sess.), as amended Apr. 21, 1998, at <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_1351-1400/sb_1374_cfa_19980811_012610_asm_floor.html> [as of July 21, 2011].)

Prior to the amendment, identity theft was a misdemeanor crime and had to specifically involve the perpetrator's use of the victim's information "to obtain, or attempt to obtain, credit, goods, or services" in the name of the victim without his or her consent. (Assem. Bill No. 156 (1997–1998 Reg.

---

[4] Section 530.5, former subdivision (c) was originally added in 1998, and stated "[i]n any case in which a person willfully obtains personal identifying information of another person without the authorization of that person, and uses that information to commit a crime in addition to a violation of subdivision (a), and is convicted of that crime, the court records shall reflect that the person whose identity was falsely used to commit the crime did not commit the crime." The Legislature deleted the phrase "without the authorization of that person, and" in 2002 (Stats. 2002, ch. 254, § 1, p. 1072), and relabeled the former subdivision as subdivision (b) in 2006 (Stats. 2006, ch. 522, § 2).

Sess.).) In adding "for any unlawful purpose, including" before the clause beginning "to obtain," the amendment expanded the range of unlawful purposes for which a perpetrator could be found guilty of committing identity theft and specifically denoted the nonexclusive nature of the list of unlawful purposes set forth in the statute.[5] The Legislature clearly intended to greatly expand the scope of unlawful conduct underlying the identity theft offense.[6]

Furthermore, " '[w]e do not . . . consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.] We also 'give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]" [Citations.]' [Citation.] ' " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " [Citation.]' [Citations.]" (*Hagedorn, supra*, 127 Cal.App.4th at pp. 741–742.)

As respondent points out, section 15 defines the terms "crime" and "public offense."[7] Section 530.5(a) uses the term "public offense," and subdivision (b)

---

[5] It was at this time the Legislature also added to the explicit list of unlawful purposes, "medical information." (Stats. 1998, ch. 488, § 1, p. 3531.)

[6] In his reply brief, appellant raised for the first time the argument that section 528.5, which makes it a misdemeanor to impersonate another person through an Internet Web site for the purposes of harming, intimidating, threatening, or defrauding another person, makes appellant's conduct criminal. He argues that his conduct was not criminal before section 528.5's effective date, that is, before January 1, 2011.

We note, however, that section 530.5 has different elements from section 528.5. Section 530.5 requires that a person willfully obtain personal identifying information and use it for an unlawful purpose. Section 528.5 does not include a requirement that a perpetrator obtain personal identifying information. As a result, a person could violate section 528.5 by merely posting comments on a blog impersonating another person. There is no requirement, under these circumstances, that the person obtain a password—a key distinction.

Further, section 528.5 does not require the perpetrator act with an unlawful purpose—merely that he or she acted with the purpose of harming, intimidating, threatening, or defrauding a person. At least the terms "harming" and "intimidating" do not necessarily have to be done for an unlawful purpose.

The act of willfully obtaining someone else's password, and then using it for an unlawful purpose, justifies more harsh treatment under section 530.5. We believe if appellant had committed these same acts after January 1, 2011, he could have been charged under both sections 528.5 and 530.5.

[7] Section 15 states: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the

uses the term "crime," indicating the Legislature was aware of terminology it could use to designate conduct as a crime. The Legislature, however, elected to use a different phrase, "any unlawful purpose," to specify the requisite unlawfulness for the offense.

Moreover, there have been several additional amendments to the statute in the years since 1998. (Stats. 2000, ch. 956, § 1, p. 7043; Stats. 2001, ch. 478, § 1, p. 4126; Stats. 2002, ch. 254, § 1, p. 1072; Stats. 2005, ch. 432, § 1, p. 3555; Stats. 2006, ch. 10, § 1; Stats. 2006, ch. 522, § 2; Stats. 2007, ch. 302, § 10.) None of the amendments have altered the "any unlawful purpose" language. If the Legislature intended to limit the scope of unlawful conduct to solely crimes, it knew how to so provide. (See *Hagedorn, supra*, 127 Cal.App.4th at p. 742.) Failure to make changes to a statute in a particular respect, when changes are made in other respects, indicates the Legislature's intent to leave the law unchanged in that particular respect. (*Ibid.*) The Legislature has expressed no intent to limit the scope of "unlawful purposes" constituting the underlying conduct for an identity theft offense.

■ Crimes are strictly creatures of penal statutes, and require both a prohibited act and a punishment. (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617], superseded by statute on other grounds as stated in *People v. Taylor* (2004) 32 Cal.4th 863, 870 [11 Cal.Rptr.3d 510, 86 P.3d 881]; § 15.) Our Supreme Court has defined the term "unlawful" to include wrongful conduct which is not criminal. In determining the scope of the term, it held that an act is "unlawful . . . if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.[8] [Citations.]" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1159 & fn. 11 [131 Cal.Rptr.2d 29, 63 P.3d 937].) Under this definition, unlawful conduct includes acts prohibited by the common law or nonpenal statutes, such as intentional civil torts.

Libel is an intentional tort. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782.) Civil Code section 45 defines the civil tort of libel: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be

---

following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or, [¶] 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State."

[8] "We need not in this case further define which sources of law can be relied on to determine whether a defendant has engaged in an independently wrongful act, other than to say that such an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive . . . ."

shunned or avoided, or which has a tendency to injure him in his occupation." Appellant practically concedes the point, arguing the "prosecution proved only that [appellant] humiliated, embarrassed, and defamed [the victim]." Here, appellant wrote sexually explicit and vulgar comments on the victims' friends' walls, accessible by the victims' friends and acquaintances, and purportedly as her. Appellant clearly exposed the victim to hatred, contempt, ridicule and obloquy with his actions.[9]

### 3. *Appellant's Actions Establish an Unlawful Purpose Under Section 653m*

Even assuming that a civil intentional tort failed to constitute an "unlawful purpose" for purposes of section 530.5, appellant's conduct was sufficient to satisfy section 530.5 based on his conduct constituting a criminal offense under section 653m, subdivision (a) (hereafter section 653m(a)).[10]

Section 653m(a) states in pertinent part: "Every person who, with intent to annoy . . . makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language . . . is guilty of a misdemeanor."

Section 653m, subdivision (c) (hereafter section 653m(c)) states in pertinent part: "Any offense committed by use of an electronic communication device or medium, including the Internet, may be deemed to have been committed when and where the electronic communication or communications were originally sent or first viewed by the recipient."

■ Appellant's fraudulent posts as the victim would have shown up on her personal Facebook page. He also altered her profile on her personal Facebook page. Section 653m(c) makes clear the offense is committed as of sending the communication. Therefore, appellant willfully obtained the victim's Facebook password and then used that information for the unlawful purpose of violating section 653m(a).

---

[9] At the disposition hearing, the victim's mother read a statement from the victim, which stated: "[l]ast year, when this started, I had people at school call me a slut and a whore. I had no idea what was going on or what I had done to be called those names. [¶] After [appellant] was found guilty, some of his friends at school started wearing 'Team [Appellant]' shirts, saying I had made this up to get [appellant] in trouble." She further related that, "[appellant's friends] have ruined half of my junior year and, now, my senior year of school. I used to love going to school. Now, I dread dealing with this every day."

[10] The issue was not raised in initial briefing or at oral argument. We requested further briefing from the parties in accordance with Government Code section 68081.

## DISPOSITION

The judgment is affirmed.

Wiseman, Acting P. J., and Detjen, J., concurred.

A petition for a rehearing was denied August 10, 2011, and the opinion was modified to read as printed above.