**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| REYES ABIGAIL LINARES-GONZALEZ, AKA Reyes Abigail Linares,<br>*Petitioner*,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney General,<br>*Respondent*. | No. 12-71142<br><br>Agency No.<br>A075-679-882 |

| | |
|---|---|
| MARIBEL PRECIADO,<br>*Petitioner*,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney General,<br>*Respondent*. | No. 12-73313<br><br>Agency No.<br>A095-759-507<br><br><br>OPINION |

On Petition for Review of Orders of the
Board of Immigration Appeals

Argued and Submitted
October 20, 2015—Pasadena, California

Filed March 21, 2016

Before: Harry Pregerson and Consuelo M. Callahan,
Circuit Judges and Stanley Allen Bastian,* District Judge.

Opinion by Judge Callahan

## SUMMARY**

### Immigration

The panel granted Reyes Linares-Gonzales' and Maribel Preciado's petitions for review of the Board of Immigration Appeals' orders finding them ineligible for cancellation of removal in part because their convictions for identity theft under California Penal Code §§ 530.5(a) and (d)(2) were categorical crimes involving moral turpitude.

The panel held that the BIA erred in finding petitioners' convictions categorical crimes involving moral turpitude, because violations of CPC §§ 530.5(a) and (d)(2) do not constitute fraud-based crimes; and nor do they necessarily involve vile, base, or depraved conduct. The panel remanded for further proceedings on an open record regarding whether petitioners meet the requirements for discretionary relief.

---

* The Honorable Stanley Allen Bastian, District Judge for the U.S. District Court for the Eastern District of Washington, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel addressed Linares' claims for asylum, withholding of removal, and relief under the Convention Against Torture in a concurrently-filed memorandum disposition.

## COUNSEL

Elsa Martinez, Los Angeles, California; Maria Teresa Delgado (argued), Ventura, California, for Petitioner Maribel Preciado.

Rosana Kit Wai Cheung and Jamie Lefkowitz (argued), Los Angeles, California, for Petitioner Linares-Gonzalez.

Stuart F. Delery, Assistant Attorney General, Civil Division; Stephen J. Flynn, Assistant Director; Francis W. Fraser, Senior Litigation Counsel; Linda Y. Cheng; Annette M. Wietecha; Jane T. Schaffner (argued); Office of Immigration Litigation, Washington, D.C., for Respondent.

## OPINION

CALLAHAN, Circuit Judge:

Petitioners Reyes Abigail Linares-Gonzales ("Linares") and Maribel Preciado ("Preciado") challenge the denial of their applications for cancellation of removal. The immigration judges ("IJ") denied their applications, and the Bureau of Immigration Appeals ("BIA") affirmed, finding, among other things, that they were ineligible for cancellation of removal because their convictions for identity theft under California Penal Code ("CPC") §§ 530.5(a) and (d)(2) were

categorical crimes involving moral turpitude ("CIMT").[1] We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and we grant the petitions.

I

1. *Linares-Gonzalez v. Lynch, No. 12-71142*

Linares is a native and citizen of Guatemala who arrived in the United States without inspection in 1998. The Department of Homeland Security initiated removal proceedings in September 2004, and Linares eventually filed an application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA")[2] as a derivative beneficiary on his father's application.[3] *See* Pub. L. No. 105-100, 111 Stat. 2160, 2193–2201 (1997).

---

[1] All references to CPC §§ 530.5(a) and (d)(2) refer to the then-applicable versions of the statutes at the time of Petitioners' convictions, unless noted otherwise. These versions of the statutes were effective from January 1, 2008 to September 30, 2011.

[2] NACARA allows certain classes of aliens to seek "special rule cancellation of removal" under the less stringent requirements for cancellation of removal applied before enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009. *Aragon-Salazar v. Holder*, 769 F.3d 699, 701 (9th Cir. 2014).

[3] Linares also applied for asylum, withholding of removal, and relief under the Convention Against Torture. Linares' petition with respect to this relief is addressed in a separate memorandum disposition filed concurrently with this opinion.

In October 2008, while these proceedings were ongoing, Linares pled guilty to three counts of identity theft under CPC § 530.5(d)(2), a felony. He received a sentence of 180 days in jail and 36 months' probation and was ordered to pay restitution.[4] Linares testified to the immigration judge that he obtained credit card numbers from about six customers at the restaurant where he worked, and he gave the numbers to a friend who paid him $20 for each number. He also testified that he did not know what his friend did with the numbers, but he thought that the friend used the numbers "to get money." Linares served 122 days of his 180-day sentence.

The IJ denied Linares' application for cancellation of removal in June 2010. The IJ held, among other things, that 1) Linares was not eligible for cancellation of removal because his 2008 identity theft conviction was a categorical CIMT because it involved an element of fraud and he did not have 10 years of continuous presence in the United States following the 2008 conviction; and 2) Linares failed to show good moral character during the required period of physical presence because he had four convictions, including three theft convictions, in the last eight years.

The BIA dismissed Linares' appeal in August 2011. The BIA held that 1) Linares was ineligible for the "petty offense exception" under Immigration and Nationality Act ("INA") § 212(a)(2)(A)(ii)[5] because he was convicted of three counts of identity theft; 2) Linares' conviction in 2008 for three

---

[4] Linares was convicted for at least three other crimes while his removal proceedings were pending, including taking a vehicle without the owner's consent, burglary, and driving under the influence.

[5] INA § 212(a)(2)(A)(ii) was codified at 8 U.S.C. § 1182(a)(2)(A)(ii).

counts of identity theft was categorically a crime involving moral turpitude, because "selling, transferring or conveying the personal identifying information of another knowing that it will be used for an unlawful purpose . . . involves conduct that is inherently base, vile, or depraved and contrary to accepted rules of morality and duties owed between persons or to society in general"; and 3) CPC § 530.5(d)(2) contains the requisite scienter required to constitute a CIMT. Accordingly, the BIA held that Linares had not shown a "realistic probability" that CPC § 530.5(d)(2) may be applied to non-turpitudinous conduct.

The BIA held that because Linares had committed a CIMT, he was subject to the heightened 10-year continuous presence requirement for special rule cancellation of removal. The BIA determined that Linares had not met the 10-year requirement, measured from the time of his identity theft conviction and rejected Linares' claim that the 10 years were measured from the date of his arrival in the United States. The BIA further held that Linares could not show good moral character under the catch-all provision of INA § 101(f), 8 U.S.C. § 1101(f) because of his convictions in 2004, 2007, and 2008.[6]

### 2. *Preciado v. Lynch, No. 12-73313*

Preciado is a native and citizen of Mexico who entered the United States without inspection in 1990. Preciado pled guilty to and was convicted for felony identity theft under

---

[6] Linares moved to reconsider, and the BIA denied the motion in March 2012. Among other rulings, the BIA reaffirmed its prior determination that Linares had not shown 10 years of continuous physical presence or good moral character after his 2008 conviction.

CPC § 530.5(a) in September 2008. Under the terms of the plea agreement, Preciado admitted the allegations of the complaint and agreed that the statutory maximum prison term was three years.[7] Preciado received a suspended sentence of 120 days in jail and probation for 36 months and was ordered to pay restitution.

In January 2009, the Department of Homeland Security began removal proceedings against Preciado, and she filed an application for cancellation of removal. The IJ denied the application in November 2010, finding that her identity theft conviction was a categorical crime involving moral turpitude that barred relief. In doing so, the IJ noted that in her plea agreement and conviction, Preciado admitted that she willfully obtained personal identifying information of the victim without authorization and used or attempted to use the information to obtain credit, goods and services, or medical information in the name of the victim without consent. The IJ also held that she did not qualify for the petty offense exception and had not demonstrated good moral character for the necessary time period.

After the IJ denied relief, and while Preciado's appeal to the BIA was pending, her identity theft conviction was reduced to a misdemeanor by the California Superior Court in February 2012, pursuant to her motion for expungement. Before the BIA, Preciado argued that her identity theft

---

[7] The felony complaint alleged that Preciado violated CPC § 530.5(a), "a Felony," "[o]n or about June 26, 2004 through June 26, 2007" when she "did willfully and unlawfully obtain personal identifying information on Marifie Drabik without authorization, and used that information for an unlawful purpose and to obtain, and attempt to obtain, credit, goods and services and medical information in the name of Marifie Drabik without consent."

conviction was subject to the petty offense exception listed at 8 U.S.C. § 1182(a)(2)(A)(ii). Preciado contended that the petty offense exception applies where the maximum possible sentence for the applicable offense does not exceed imprisonment for one year and the alien is not sentenced to a term of imprisonment in excess of six months. In her view, because the maximum punishment for CPC § 530.5(a) is imprisonment in a county jail not to exceed one year, and her actual sentence was 120 days in jail, the petty offense exception applied, even if CPC § 530.5(a) was a CIMT. Preciado also argued that her case should be remanded in light of the reduction of her felony conviction to a misdemeanor, which she claimed was additional support for her contention that she was eligible for the petty offense exception.

The BIA dismissed Preciado's appeal in September 2012. The BIA acknowledged that CPC § 530.5(a) did not require an intent to defraud. However, the BIA held that CPC § 530.5(a) was still a categorical CIMT because there was no realistic possibility that the applicable statute would be applied to non-turpitudinous conduct. The BIA reasoned that there were no cases where CPC § 530.5(a) had been applied to non-turpitudinous conduct, and identity theft was described by the statute as an "indisputable evil."

The BIA also held that the petty offense exception did not apply, even though her conviction had been reduced to a misdemeanor, because 1) even if a crime would otherwise qualify for the petty offense exception, if it is a CIMT it may still disqualify an applicant from cancellation of removal; and 2) the later reduction of Preciado's conviction to a misdemeanor, or even its expungement, did not alter the fact that she had originally been convicted for a CIMT for which

a sentence of one year or longer may be imposed. Thus, the BIA held that Preciado's identity theft conviction rendered her ineligible for cancellation of removal.

## II

To show his eligibility for cancellation of removal under 8 U.S.C. § 1229b(b), a nonpermanent resident alien must show that he:

> (A)    has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B)    has been a person of good moral character during such period;
>
> (C)    has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
>
> (D)    establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Offenses listed under 8 U.S.C. § 1227(a)(2), which render an alien ineligible for cancellation of removal under § 1229b(b), include crimes of moral turpitude. *Cf.* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (alien who commits a crime of moral

turpitude is inadmissible).   NACARA imposes similar requirements for cancellation of removal.  *See* 8 C.F.R. § 1240.66.

III

The BIA dismissed Linares' and Preciado's appeals based in part on its determination that both had committed CIMTs, due to their identity theft convictions under CPC § 530.5. Both Linares and Preciado argue that their violations of CPC § 530.5 were not categorical CIMTs.[8]

In determining whether the conduct proscribed by the statute involves moral turpitude, we apply the categorical approach of *Taylor v. United States*, 495 U.S. 575, 598–602 (1990), comparing the elements of the state offense to those of the generic CIMT to determine if there is a categorical match.  *See Descamps v. United States*, 133 S. Ct. 2276, 2283–86 (2013).  To show that a state offense is broader than the applicable generic crime as defined by federal law, the defendant or alien must show that there is a "realistic probability" that the statute would be applied to acts not covered by the generic federal statute. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  To do so, the defendant or alien "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.*

---

[8] The government has not argued, and it does not appear, that CPC §§ 530.5(a) or (d)(2) are generic "theft" offenses that would render an alien ineligible for cancellation of removal, because the statutes do not require that the defendant act with "criminal intent to deprive the owner of the rights and benefits of ownership." *See United States v. Vidal*, 504 F.3d 1072, 1077 (9th Cir. 2007).

"[T]he federal generic definition of a CIMT is a crime involving fraud or conduct that 1) is vile, base, or depraved and 2) violates accepted moral standards." *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010) (citation omitted); *see also Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012) (CIMTs are generally defined as crimes that are "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.") (citations omitted). "[F]raud crimes are categorically crimes involving moral turpitude, simply by virtue of their fraudulent nature." *Planes v. Holder*, 652 F.3d 991, 997 (9th Cir. 2011). "Non-fraudulent CIMTs 'almost always involve an intent to harm someone,'" *Saavedra-Figueroa*, 625 F.3d at 626 (quoting *Nunez v. Holder*, 594 F.3d 1124, 1131 & n.4 (9th Cir. 2010)), or "intent to injure, actual injury, or a protected class of victim," *Turijan v. Holder*, 744 F.3d 617, 619 (9th Cir. 2014) (citation omitted). In determining whether an offense is a CIMT, the BIA has examined "whether the act is accompanied by a vicious motive or a corrupt mind" because "evil or malicious intent is . . . the essence of moral turpitude." *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012) (citations omitted). We have approved this approach. *Id.*

Linares and Preciado were convicted under separate but similar subsections of CPC § 530.5. The then-applicable version of CPC § 530.5(a) stated:

> Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property,

or medical information without the consent of that person, is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment in the state prison.

The then-applicable version of CPC § 530.5(d)(2) stated:

Every person who, with actual knowledge that the personal identifying information . . . of a specific person will be used to commit a violation of subdivision (a), sells, transfers, or conveys that same personal identifying information is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in the state prison, or by both a fine and imprisonment.

In essence, § 530.5(a) prohibits someone knowingly obtaining personal identifying information and using that information for any unlawful purpose, while § 530.5(d)(2) prohibits someone transferring that information to someone else, knowing that the transferee will use it for an unlawful purpose.

A. *CPC §§ 530.5(a) and (d)(2) are not categorical fraud crimes*

The government argues that violations of CPC § 530.5(a) are inherently fraudulent because "false statements that were made with the intent of inducing reliance is a form of fraud." In its view, the statute requires the perpetrator to willfully and

unlawfully obtain another person's identity through false representations in order to obtain a benefit or something of value. Thus, the government argues, violations of CPC § 530.5(a) are necessarily acts of fraud, even though there is no explicit fraud element. *See Tijani v. Holder*, 628 F.3d 1071, 1075–76, 1078 (9th Cir. 2010) (discussing CPC § 532a(1), which prohibits making a false statement with the intent that it be relied on to obtain "delivery of personal property, the payment of cash, the making of a loan or credit," but which does not expressly require intent to defraud); *Blanco v. Mukasey*, 518 F.3d 714, 719 (9th Cir. 2008) ("[I]ntent to defraud is implicit in the nature of the crime when the individual makes false statements in order to procure something of value, either monetary or non-monetary.").

The government's contention that violations of CPC § 530.5(a) are inherently fraudulent is not persuasive. California appellate courts have specifically stated that CPC § 530.5(a) does not require intent to defraud. In *People v. Hagedorn*, 127 Cal. App. 4th 734, 741 (2005), the California Court of Appeal explained that "subdivision (a) clearly and unambiguously does *not* require intent to defraud." The *Hagedorn* court noted that another subsection of the identity fraud statute, which criminalized the *acquisition or possession* of personal identifying information but did not require its use, specifically required intent to defraud.[9] The court indicated that "if the Legislature meant for subdivision (a) to require an intent to defraud, it knew how to so provide," but it viewed the *use* of personal identifying information "as

---

[9] The *Hagedorn* court's statement here appears to refer to § 530.5(d)(1). Subsections 530.5(c)(1), (c)(2), and (c)(3) also require intent to defraud and do not require the use of the personal identifying information.

the more serious offense and worthy of a more expansive scope" than "mere acquisition or possession." *Id.* at 742; *see also People v. Johnson*, 209 Cal. App. 4th 800 (2012) (discussing *Hagedorn* and explaining that the purpose of the California identity theft statute is to criminalize the willful use of another's personal identifying information, regardless of whether the user intends to defraud or whether any actual harm or loss is caused). The same reasoning applies with equal force to CPC § 530.5(d)(2).

Our prior case law also supports a determination that CPC §§ 530.5(a) and (d)(2) are not fraud crimes. In *Blanco*, 518 F.3d at 720, we held that falsely identifying oneself to an officer under CPC § 148.9(a) is not a categorical CIMT. We determined the statute only required that a forbidden act was done deliberately and with knowledge, but not with evil intent. We further explained that "[f]raud . . . does not equate with mere dishonesty, because fraud requires an attempt to induce another to act to his or her detriment. One can act dishonestly without seeking to induce reliance. Our cases have therefore recognized fraudulent intent only when the individual employs false statements to obtain something tangible." *Id.* at 719 (citations omitted). Thus, we held that a violation of the false identification statute was not a CIMT, because "[w]hen the only 'benefit' the individual obtains is to impede the enforcement of the law, the crime does not involve moral turpitude." *Id.*; *see also Tijani*, 628 F.3d at 1075 ("[T]o be inherently fraudulent, a crime must involve knowingly false representation to gain something of value.") (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1076 (9th Cir. 2007) (en banc)).

Just as the statute in *Blanco* did not require that the perpetrator obtain a tangible benefit, CPC §§ 530.5(a) and

(d)(2) do not require that the perpetrator obtain anything of value. Rather, they require only that the perpetrator use the victim's identifying information for an unlawful purpose, or transfer the information with the knowledge that it will be used for an unlawful purpose. Indeed, in *In re Rolando S.*, 197 Cal. App. 4th 936 (2001), the defendant was convicted under CPC § 530.5(a) after using the victim's identifying information to post obscene messages using the victim's Facebook account. Although the defendant in *Rolando* may have enjoyed some personal satisfaction from doing so, he obtained no tangible benefit from his identity theft. Accordingly, the *Rolando* defendant did not commit fraud, showing that CPC § 530.5(a) has been applied to non-fraudulent conduct.

Given the express holdings of *Hagedorn* and *Johnson* that no fraudulent intent is required and the fact that a person may violate CPC §§ 530.5(a) and (d)(2) without obtaining any tangible benefit, we reject the government's argument that violations of these subsections are categorical fraud-based CIMTs.[10]

---

[10] Both the lack of fraudulent intent and the lack of a requirement that the defendant obtain something of value distinguish the statutes at issue from at least two other identity theft statutes we have previously examined. In *Ibarra-Hernandez v. Holder*, 770 F.3d 1280, 1281–82 (9th Cir. 2014), we held that an Arizona identity theft statute was not a categorical fraud crime because it was possible to commit a violation of the statute using a fictitious person's name. However, we agreed with the BIA that, employing the modified categorical approach and reviewing the record of conviction, the petitioner's taking of a Social Security number of another person to obtain employment was a form of theft involving fraud. In *Juarez-Romero v. Holder*, 359 F. App'x 799, 799 (2009), we held that a Washington identity theft statute was a categorical fraud crime because it required "the knowing use of another person's identification to

B. *CPC §§ 530.5(a) and (d)(2) do not necessarily involve vile, base, or depraved conduct*

Even though violations of CPC §§ 530.5(a) and (d)(2) are not categorical fraud crimes, they may still be categorical CIMTs if they involve conduct that is vile, base, or depraved and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *See Robles-Urrea*, 678 F.3d at 708. Preciado relies on *Rolando*, 197 Cal. App. 4th 936, to argue that CPC § 530.5(a) has been applied to conduct that was not vile, base, or depraved, and thus her conviction was not categorically a CIMT. According to Preciado, she established the required "realistic probability" that the statute was applied to non-turpitudinous conduct because Rolando applied CPC § 530.5(a) to non-fraudulent conduct that was merely harassing or annoying. Although Preciado goes too far in describing the conduct at issue in *Rolando* as merely annoying or harassing, in light of existing Ninth Circuit case law, the BIA erred in determining that violations of CPC §§ 530.5(a) and (d)(2) are categorically vile, base, and depraved.

In *Rolando*, the California Court of Appeal affirmed the defendant's conviction for identity theft under § 530.5(a) for obtaining the victim's identifying information and posting vulgar messages using her Facebook account. Specifically, the defendant obtained the victim's email password to gain access to her Facebook account, and then posted extremely crude and offensive messages on two of her male friends' Facebook "walls" and "altered her profile description in a vulgar manner." 197 Cal. App. 4th at 939–42. On appeal, the

_____

obtain something of value . . . with the intent to commit (or to aid and abet) any crime."

defendant argued, among other things, that there was insufficient evidence that he used the victim's identifying information for an unlawful purpose. He claimed that at most he "possibly defamed" the victim, and that as a civil tort, libel does not constitute an unlawful purpose under CPC § 530.5(a). *Id.* at 942.

The California Court of Appeal rejected this argument, holding that "any unlawful purpose" included civil torts, not strictly criminal conduct. *Id.* at 943–47. The court explained that before the statute was amended in 1998, "identity theft was a misdemeanor crime and had to specifically involve the perpetrator's use of the victim's information 'to obtain, or attempt to obtain, credit, goods, or services' in the name of the victim without his or her consent." *Id.* at 944. By adding the "for any unlawful purpose" language, the amendment greatly expanded the range of unlawful purposes for which a perpetrator could be found guilty of identity theft, as intended by the legislature.[11] *Id.* at 945 (citations omitted).

The *Rolando* court noted that the California Supreme Court has defined the term "unlawful" to include wrongful conduct that is not criminal, specifically conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 946 (citations omitted). Thus, if a defendant committed identity theft with the intent to commit an intentional civil tort, including libel, he had sufficient intent to be convicted under CPC § 530.5. *Id.* at 946–47.

---

[11] The *Rolando* court also noted that the statute had been amended several times without the legislature limiting the unlawful purpose language. *Id.* at 946.

The *Rolando* court then looked at libel under California law, which is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." *Id.* at 946–47. The court explained that the defendant, through his Facebook posts, had "clearly exposed the victim to hatred, contempt, ridicule and obloquy with his actions." *Id.* at 947.

The *Rolando* case and the language of the statute show that the BIA erred in determining that identity theft under CPC §§ 530.5(a) and (d)(2) is categorically vile, base, or depraved, and that violations of these subsections are therefore CIMTs. The statute does not require "intent to injure, actual injury, or a protected class of victim." *See Turijan*, 744 F.3d at 619 (citation omitted). As discussed in *Johnson*, 209 Cal. App. 4th at 818, the identity theft statute criminalizes the "willful use of another's personal identifying information, regardless of whether the user intends to defraud and regardless of whether any actual harm or loss is caused." The statute only requires that the perpetrator use the information for an unlawful purpose. If, for example, the perpetrator uses someone's identifying information to obtain a credit card but pays off the balance every month, he would still be guilty of violating CPC § 530.5(a) even if he did not have any intent to cause harm. He also may not have caused any actual injury to the victim, and would not have victimized a member of a special class.[12]

---

[12] Of course, under this example, the perpetrator would have committed fraud. This example simply shows that CPC §§ 530.5(a) and (d)(2) do not require intent to cause harm or actual injury.

The discussion of the underlying unlawful purpose in *Rolando* also tends to show that identity theft is not categorically vile, base, or depraved.  The *Rolando* court held that the defendant had used the victim's identifying information for an unlawful purpose—libel—because there was clearly sufficient evidence that the defendant's posting of obscene comments in the name of the victim "exposed the victim to hatred, contempt, ridicule and obloquy with his actions."    197 Cal. App. 4th at 946–47.    However, California's definition of libel neither requires that the defendant intend to harm the victim nor that the victim is in fact harmed.   Rather, the defendant need only publish something that is false and unprivileged, without any requirement regarding the defendant's intent.   Further, the publication need not actually harm the victim, as it is sufficient to "have a tendency to injure" the victim in his occupation, even if no harm actually occurs.  *Id.*

Moreover, *Rolando* shows that a perpetrator could violate § 530.5(a) by using a victim's personal identifying information to hijack the victim's social media accounts and use his or her accounts to post obscene messages, with only the intent to annoy. *See id.* at 947.  The court in *Rolando* held that the defendant willfully used the victim's identifying information for an unlawful purpose because his actions constituted both libel and a violation of CPC § 653m.  *Id.* This statute requires that someone "with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or any threat to inflict injury. . . ."  Cal. Penal Code § 653m.  While the defendant in *Rolando* may have actually acted with intent to harm and appears to have caused significant harm, CPC § 653m's language shows that a person need not have an intent to harm

or actually cause harm in order to violate CPC §§ 530.5(a) or (d)(2).

It may be the case that most cases of identity theft under CPC § 530.5 involve the use of identifying information to obtain credit, goods, or services, which are implicitly fraudulent uses and therefore morally turpitudinous. Nevertheless, the lack of any requirement that the defendant intend to harm the victim or that actual loss occur, and the fact that the statute does not protect a special class of victims, shows a realistic probability that CPC §§ 530.5(a) and (d)(2) could be applied to non-turpitudinous conduct.[13] Accordingly, the BIA erred in holding that these subsections are categorical CIMTs, and we grant Preciado's and Linares' petitions on this ground.[14]

---

[13] The BIA is correct that CPC § 530.5(d)(2) [and by extension, § 530.5(a)] requires that the defendant act with scienter, specifically "actual knowledge," because the defendant must willfully obtain the victim's identifying information and use it for an unlawful purpose, or transfer the information knowing that it will be used for an unlawful purpose. However, this scienter is not enough alone to make these crimes vile, base, or depraved, absent any requirement of intent to harm, actual harm, or a special class of victim.

[14] We reject Linares' other arguments in support of his contention that his identity theft crime was not a categorical CIMT. Linares appears to be contesting in part the sufficiency of the evidence showing he acted willfully, though he cannot collaterally attack his state conviction on a petition for review of the BIA decision. *See Leal v. Holder*, 771 F.3d 1140, 1148 n.5 (9th Cir. 2014) (rejecting contention that petitioner could point to the facts of his state case to argue that the offense was not a CIMT, as the court looks only to the elements of the state offense and "a petitioner cannot collaterally attack his criminal conviction" by arguing that there was an inadequate factual basis for the offense). Moreover, when he pled guilty to violating CPC § 530.5(d)(2), Linares admitted that he willfully obtained personal identifying information of another person

IV

Linares' and Preciado's petitions for review of the BIA's denial of their requests for cancellation of removal are hereby granted.  Because we grant the petitions based on the BIA's erroneous determination that Petitioners' crimes under CPC § 530.5 were categorical CIMTs, we do not address the parties' arguments on whether the petty offense exception applies in either case.  We also express no opinion on 1) whether CPC §§ 530.5(a) or (d)(2) are divisible such that the modified categorical approach may apply; 2) assuming the modified categorical approach applies, whether the record of conviction shows that Linares or Preciado committed CIMTs; and 3) whether Petitioners can satisfy the physical presence and good moral character requirements for cancellation of removal.  Accordingly, we remand for further proceedings on an open record to determine whether Petitioners meet the requirements for discretionary relief.

**PETITIONS GRANTED**.

---

and that he transferred the information to another person knowing it would be used for an unlawful purpose.