Filed 3/23/26  Tawasha v. Select Comfort Retail Corp. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LUCIA TAWASHA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SELECT COMFORT RETAIL<br>CORPORATION,<br><br>        Defendant and Appellant. | A170057<br><br><br>(Alameda County<br>Super. Ct. No. 23CV049280) |

Plaintiff, Lucia Tawasha, brought this action against her former employer, defendant, Select Comfort Retail Corporation (Select Comfort), alleging numerous Labor Code violations.  Plaintiff brought these claims as a representative action under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA), seeking civil penalties for herself and other aggrieved employees "to the extent they were not paid at the prevailing wage rate for all hours worked."

Select Comfort moved to compel arbitration of plaintiff's individual claims under the Labor Code and to stay all remaining claims.  The trial court denied Select Comfort's motion after finding the relevant arbitration and confidentiality agreements were permeated with substantive and procedural unconscionability, making it impossible to sever the offensive provisions while enforcing the remainder of the agreements.  We affirm the

1

trial court's unconscionability findings. However, we vacate the court's order and remand the matter with instructions to reconsider the issue of severance in light of the recent California Supreme Court decision *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478 (*Ramirez*).

## FACTUAL AND PROCEDURAL BACKGROUND

Select Comfort is a Minnesota corporation that operates retail stores selling adjustable-firmness beds and other sleep-related accessory products throughout California and the United States. Plaintiff was employed as a sales associate in Select Comfort's San Francisco Bay Area retail stores on two separate occasions, the first beginning in 2019 and the second in 2022. As part of the 2022 hiring process, plaintiff was required to read and sign documents on Select Comfort's Web-based platform, Workday Candidate Home, which included an arbitration agreement (Arbitration Agreement) and a confidentiality agreement (Confidentiality Agreement). Plaintiff electronically signed both agreements on July 18, 2022, and her employment began 10 days later, on July 28, 2022. Her employment was terminated on or about March 24, 2023.

## I. *The Arbitration Agreement.*

The Arbitration Agreement, paragraph 1, states in relevant part: "You and [Select Comfort] hereby agree that . . . any and all disputes, claims or controversies between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship, that are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neutral arbitrator. This Agreement includes Claims . . . [y]ou may have against the Company" and

"affects your rights to a trial by a jury. You may wish to seek legal advice before signing this Agreement."

The Arbitration Agreement, section 3, provides, in relevant part: "By signing this Agreement, You agree that any arbitration shall be conducted before one neutral arbitrator selected by the Parties" and "shall be conducted under the JAMS Employment Arbitration Rules & Procedures ('JAMS Rules') then in effect," a copy of which may be found on the JAMS Web site or obtained from Select Comfort's human resources department.

Section 4 of the Arbitration Agreement, in turn, lists the types of claims subject to arbitration, including claims "for: . . . wages or other compensation due; penalties; benefits; reimbursement of expenses; [and] violation of any . . . state . . . statute, ordinance or regulation . . . , including but not limited to . . . the California Labor Code . . . ."

In section 5, the Arbitration Agreement states in all capital letters and bold font style: "**BY SIGNING THIS AGREEMENT, YOU AGREE THAT YOU MAY BRING AND PURSUE CLAIMS AGAINST THE COMPANY ONLY IN YOUR INDIVIDUAL CAPACITY, AND MAY NOT BRING, PURSUE OR ACT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR COLLECTIVE PROCEEDING. [¶] . . . [¶]**

"**YOU FURTHER AGREE THAT YOU MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS EXCEPT TO THE EXTENT THIS PROVISION IS UNENFORCEABLE AS A MATTER OF LAW.**

"**YOU AGREE THAT ANY REPRESENTATIVE CLAIMS THAT ARE FOUND NOT SUBJECT TO ARBITRATION UNDER THIS AGREEMENT SHALL BE RESOLVED IN COURT AND ARE STAYED PENDING THE OUTCOME OF THE ARBITRATION. . . .**"

Under sections 7 and 8 of the Arbitration Agreement, the employee "shall not be required to pay any cost or expense of the arbitration that you would not be required to pay if the matter had been heard in court. The Company will pay for arbitrator compensation and any other administrative fees unique to arbitration." Further, "[t]he arbitrator shall apply state and/or federal substantive law to determine issues of liability and damages regarding all claims to be arbitrated," and "is authorized to award any remedy or relief that would have been available to the Parties, in their individual capacity, had the matter been heard in court. Nothing in this Agreement shall prohibit or limit the Parties from seeking provisional remedies under California Code of Civil Procedure section 1281.8, including, but not limited to, injunctive relief from a court of competent jurisdiction."

Finally, section 11 contains a severance provision stating, in relevant part: "If any provision of this Agreement is determined to be illegal or unenforceable, such determination shall not affect the balance of this Agreement, which shall remain in full force and effect and such invalid provision shall be deemed severable. [¶] . . . [¶] BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT."

## II.    *The Complaint.*

On October 30, 2023, plaintiff filed a complaint in Alameda County Superior Court under PAGA as a private attorney general on behalf of the

4

general public and all nonexempt, aggrieved Select Comfort employees in California. This representative complaint alleged Select Comfort engaged in a systematic pattern of wage and hour violations under the Labor Code by, among other things: (a) failing to accurately pay overtime wages; (b) failing to pay minimum wages; (c) failing to provide meal periods before the end of the fifth hour worked and failure to pay an additional hour's pay in lieu of providing a meal period before the end of the fifth hour worked; (d) failing to authorize and permit rest breaks for every four hours or major fraction thereof worked and failing to pay an additional hour's pay in lieu of providing a rest period; (e) failing to pay all wages earned and owed upon separation from Select Comfort's employ; (f) failing to provide accurate itemized wage statements; (g) knowingly and intentionally failing to maintain accurate and complete records; and (h) failing to indemnify for necessary business expenses. For these violations, plaintiff sought civil penalties under PAGA on behalf of herself and all other aggrieved employees, reasonable attorney's fees and costs, and any other relief the court deemed proper.

### III. *Select Comfort's Motion to Compel Arbitration, the Trial Court's Denial of the Motion, and This Appeal.*

On January 11, 2024, Select Comfort filed a motion to compel arbitration of plaintiff's individual PAGA claim and to stay prosecution of her nonindividual PAGA claim pending resolution of the arbitration. Plaintiff opposed the motion, and a hearing was held March 5, 2024.

After taking the matter under submission, the trial court issued a written order denying Select Comfort's motion. As a threshold issue, the trial court found the Arbitration Agreement must be considered in conjunction with the Confidentiality Agreement, which was signed on the same day and was part of the same transaction. Then, reading the agreements together, the court found them permeated with procedural and substantive

5

unconscionability, such that severing the offensive provisions was not feasible. Accordingly, the court declined to enforce the Arbitration Agreement, prompting this timely appeal.

## DISCUSSION

On appeal, Select Comfort contends the trial court erred in (1) construing the Arbitration Agreement and the Confidentiality Agreement as one agreement; (2) finding the Arbitration Agreement, construed with the Confidentiality Agreement, procedurally and substantively unconscionable; and (3) refusing to sever any impermissible provisions while enforcing the remainder of the Agreements. We address these issues in turn.

### I.     *Legal Framework.*

The Federal Arbitration Act (9 U.S.C. § 1 et seq.) states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." (9 U.S.C. § 2.) Under the act, a party aggrieved by another party's failure or refusal to arbitrate under a written arbitration agreement may move the court for an order compelling the arbitration to proceed in the manner required by the agreement. (9 U.S.C. § 4.)

Both California and federal law have a strong policy favoring arbitration as the means to resolve disputes. (*Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 96–97 (*Armendariz*).) "There is no public policy, however, favoring arbitration of disputes which the parties have not agreed to arbitrate." (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.)

The party seeking arbitration bears the burden of proving the existence of an enforceable arbitration agreement that applies to the underlying dispute, while the party opposing arbitration bears the burden to prove any

6

defense, including unconscionability. (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 77.)

"On appeal from the denial of a motion to compel arbitration, 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law.' " (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.) To the extent the trial court resolved factual disputes, we review the court's findings for substantial evidence. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) We review the trial court's decision to sever or not to sever unconscionable provisions for abuse of discretion. (*Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 313.)

## II.    *Procedural and Substantive Unconscionability.*

An arbitration agreement is subject to revocation if it is unconscionable. (*Armendariz, supra*, 24 Cal.4th at pp. 98–99.) "An evaluation of unconscionability is highly dependent on context. [Citation.] The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision. (Civ. Code, § 1670.5, subd. (b); [citations].) . . . The ultimate issue . . . is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911–912.)

Unconscionability has procedural and substantive elements. While the procedural element focuses on " ' "oppression" ' " or " ' "surprise" ' " due to unequal bargaining power, the substantive element focuses on " ' "overly harsh" ' " or " ' "one-sided" ' " results. (*Armendariz, supra*, 24 Cal.4th at p. 114.) Procedural and substantive unconscionability " 'must both be present in order for a court to exercise its discretion to refuse to enforce a contract or

7

clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid.*, italics omitted.)

## A.   Jointly Construing the Arbitration and Confidentiality Agreements.

The trial court found the Confidentiality Agreement "was executed together with the Arbitration Agreement as part of a single transaction [citations] that are separate aspects of a single primary transaction and therefore the two agreements are construed together as one. (*Alberto v. Cambrian Homecare* ('*Alberto*') (2023) 91 Cal.App.5th 482, 490–491.)" (Italics added.) We agree.

" ' "Under Civil Code section 1642, it is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract [citation]." ' [Citation.] According to that rule, documents executed as part of a single transaction are construed together, even if they do not expressly refer to one another." (*Alberto, supra*, 91 Cal.App.5th at p. 490.)

Here, as in *Alberto*, the two agreements were executed by plaintiff on the same day, as part of the same transaction: the process of hiring plaintiff to work as a Select Comfort sales associate. Moreover, both agreements govern the resolution of disputes arising between plaintiff and Select Comfort in the course of their employment relationship. (See *Alberto, supra*, 91 Cal.App.5th at pp. 490–491.) Indeed, the Confidentiality Agreement expressly references the Arbitration Agreement, stating: "This Agreement supersedes any and all other agreements, whether oral or written, express or implied, between the Parties hereto with respect to the subject matter herein,

8

which [*sic*] the exception of any *arbitration agreement*(s) between the parties." (Italics added.) As the trial court recognized, treating these agreements separately for the purpose of assessing conscionability would, thus, "fail[] to account for the overall dispute resolution process the parties agreed upon." (*Id.* at p. 491; accord, *Gurganus v. IGS Solutions LLC* (2025) 115 Cal.App.5th 327, 334–335.)

Accordingly, as *Alberto, supra*, held, "unconscionability in the Confidentiality Agreement can, and does, affect whether the Arbitration Agreement is also unconscionable. To hold otherwise would let [defendant] impose unconscionable arbitration terms, and then avoid a finding of unconscionability because it put the objectionable terms in a (formally) separate document. That is contrary to Civil Code section 1642." (91 Cal.App.5th at p. 491.) As such, we now turn to the issue of unconscionability, reading these two agreements as one.

## B. Procedural Unconscionability.

"Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' " (*Ramirez, supra,* 16 Cal.5th at p. 492.) "This element is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Ibid*.)

Here, the procedural unconscionability element is met because the Arbitration Agreement was "adhesive," meaning it was offered to plaintiff, the weaker party, on a "take it or leave it" basis without offering her any opportunity to negotiate its terms. (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 185.)

9

Select Comfort responds that, even if signing the Arbitration Agreement is mandatory for an employee, "an arbitration agreement is not invalid merely because it is imposed as a condition of employment." We agree. (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1127–1128 ["under both federal and state law, an employee's rights to a jury trial and a judicial forum can be validly waived by agreement, even where the waiver is required as a condition of employment"]; *Rodriguez v. Superior Court* (2009) 176 Cal.App.4th 1461, 1470 [adhesive nature of a contract is not dispositive].) Thus, as the trial court recognized, when, as here, an arbitration agreement is adhesive but "there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.' " (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704.) Accordingly, we must turn to substantive unconscionability.

**C.     Substantive Unconscionability.**

"Mutuality is the ' "paramount consideration" ' in assessing substantive conscionability . . . ." (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1056.) Unilateral terms with "overly harsh effect[s]" are the hallmark of substantive unconscionability. (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1407.) Thus: "Substantive unconscionability is indicated by contract terms so one-sided as to 'shock the conscience.' " (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391, italics omitted.) In other words, substantive unconscionability " ' "requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.' " ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.)

10

The trial court relied on provisions of both the Arbitration Agreement and the Confidentiality Agreement to find substantive unconscionability, reasoning the agreements, signed by plaintiff on the same date as part of the hiring process, were part of the same transaction. Specifically, the court found unlawful: (1) a provision in the Confidentiality Agreement allowing Select Comfort to obtain an injunction in court, without making a showing of irreparable harm, to enforce the Confidentiality Agreement; (2) a provision in the Confidentiality Agreement prohibiting employees from disclosing their compensation; and (3) a provision in the Arbitration Agreement prohibiting employees from participating in representative actions. We address these provisions *post*.

1.    <u>Injunctive Relief Provisions.</u>

Section 8 of the Confidentiality Agreement states in relevant part: "Employee recognizes and agrees that a breach of any or all of the provisions of Sections 1 through 7 of this Agreement will constitute immediate and irreparable harm to Sleep Number for which damages cannot be readily calculated and for which damages are an inadequate remedy. Accordingly, Employee acknowledges that Sleep Number shall be entitled to injunctive and/or declaratory relief."

We agree with the trial court this provision unilaterally favors Select Comfort with an "overly harsh effect" on the rights of plaintiff. (*Harper v. Ultimo, supra*, 113 Cal.App.4th at p. 1407.) Confidentiality agreements are "not per se unconscionable when [they are] based on a legitimate commercial need (such as to protect trade secrets or proprietary information). (*Baltazar v. Forever 21, Inc., supra*, 62 Cal.4th at p. 1250.)" (*Hasty v. American Automobile Assn., etc.* (2023) 98 Cal.App.5th 1041, 1061–1062, some italics omitted (*Hasty*).) Select Comfort has identified no legitimate commercial

11

need for excusing itself from proving irreparable harm before obtaining injunctive relief against an employee for any breach of the Confidentiality Agreement. As such, the finding that this provision is substantively unconscionable stands. (*Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 662 ["Drastic limitations on one party's remedies support a finding of substantive unconscionability"].)

Defending this provision, Select Comfort notes the Confidentiality Agreement provides in section 10.4 that said agreement "supersedes any and all other agreements" between the parties with "the exception of any arbitration agreement(s)," such that the challenged provision need not be enforced. Select Comfort also notes there is no "exception" from the Arbitration Agreement for the employer to seek an injunction in court; rather, the arbitrator "is authorized to award any remedy or relief" that would have been available in court, including declaratory and injunctive relief, to either party. The Arbitration Agreement also permits either party to seek "provisional remedies under . . . Code of Civil Procedure section 1281.8, including, but not limited to, injunctive relief from a court of competent jurisdiction."

Notwithstanding these other provisions, however, the fact remains that Select Comfort is empowered by the Confidentiality Agreement to obtain injunctive relief against plaintiff, whether in court or in arbitration, without any showing of irreparable harm—a significant remedy not available to plaintiff. This is one-sided and deeply unfair—thereby meeting the legal standard of substantive unconscionability. (*Hasty, supra*, 98 Cal.App.5th at p. 1059 [" ' " 'terms that are "unreasonably favorable to the more powerful party" ' " ' " are substantively unconscionable].)

## 2.    Ban on Disclosure of Employee Compensation.

Under the Confidentiality Agreement, "Confidential Information is and shall remain the sole and exclusive property" of Select Comfort.  Employees are thus barred, during and after their employment, from "us[ing], divulg[ing], disclos[ing] and/or communicat[ing]" such information without Select Comfort's prior written authorization.

The Confidentiality Agreement broadly defines " 'Confidential Information' " in section 3.1 to include "Sleep Number's products, services, . . . methods of doing business, pricing information, marketing techniques, strategies, programs, discounts, business affairs, negotiations, selling techniques, agreements, costs, operations, accounting procedures, financial statements, labor relations, employees, *employee compensation*, research, projects, proposals, processes, . . . flow charts, diagrams, software programs, experiments, and any other confidential information of any kind, nature or description, tangible or intangible, in whatever form, relating to Sleep Number, its customers, and/or its vendors."  (Italics added.)

The trial court found "this [provision] clearly weighs in favor of substantive unconscionability because it violates the public policy against prohibiting employees from disclosing their compensation as embodied in Labor Code section 232."  The court is correct.

Labor Code section 232, subdivision (b) states:  "No employer may . . . : [¶] . . . [¶] . . . Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose the amount of his or her wages."  The Confidentiality Agreement directly contravenes this statute by prohibiting employees from disclosing "employee compensation."  A "facially illegal provision, in direct contravention of the Labor Code, is unconscionable." (*Alberto, supra*, 91 Cal.App.5th at p. 493)

13

3. <u>Waiver of Plaintiff's Right to Participate in Representative Actions.</u>

Lastly, the Arbitration Agreement, section 5, provides:

**"YOU FURTHER AGREE THAT YOU MAY NOT BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS EXCEPT TO THE EXTENT THIS PROVISION IS UNENFORCEABLE AS A MATTER OF LAW."**

The California Supreme Court has held that while an employee may be compelled to arbitrate PAGA claims " 'premised on Labor Code violations actually sustained by' the plaintiff," the plaintiff "maintains statutory standing to pursue 'PAGA claims arising out of events involving other employees' [citation] in court." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1114.) Thus, when, as here, an arbitration provision purports to ban all representative actions against the company, the provision is substantively unconscionable "because it requires an employee to waive a right that is not waivable. (*Iskanian v. CLS Transportation Los Angeles, LLC* [(2014)] 59 Cal.4th [348,] 383, overruled on other grounds in *Viking River Cruises, Inc. v. Moriana* [(2022)] 596 U.S. [639,] 660–661 [213 L.Ed.2d 179, 199–200]; [citation].)" (*Hasty, supra,* 98 Cal.App.5th at p. 1063.)

Select Comfort attempts to defend the Arbitration Agreement's prohibition on representative actions by arguing: "To the extent the limitation on representative actions is broader than the law permits, the provision specifically says that it does not apply 'to the extent this provision is unenforceable as a matter of law.' [Citation.]" Moreover, Select Comfort adds, "[P]eople 'are presumed to know the law . . . .' (*People v. Hagedorn*

14

(2005) 127 Cal.App.4th 734, 748.)" And to "the extent an employee did not know the law, the Arbitration Agreement encouraged the employee 'to seek legal advice' and 'to consult an attorney.' [Citations.]"

Even accepting Select Comfort's arguments, they do not change the fact that section 5 of the Arbitration Agreement is unlawful to the extent it purports to ban plaintiff's participation in representative actions because an employer cannot, as a matter of public policy, force an employee to waive a statutory right. (*Iskanian v. CLS Transportation Los Angeles, LLC, supra*, 59 Cal.4th at p. 384 ["an employment agreement [that] compels the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law"].) As such, section 5 is indeed substantively unconscionable. The fact that section 5 in effect saves itself with language "signaling to the reader that the law may limit such provisions" is relevant not to the issue of whether the provision is unconscionable (it is) but, rather, to the broader issue of whether the Arbitration Agreement is so permeated with unconscionability that severance is not available. To that issue, we now turn.

III. *Decision Not to Sever Unconscionable Provisions.*

When, as here, a court finds as a matter of law that a contract or any provision thereof is unconscionable, the court may refuse to enforce the contract or it may limit the application of any unconscionable clause so as to avoid an unconscionable result. (Civ. Code, § 1670.5, subd. (a).) Here, Select Comfort contends the trial court abused its discretion by refusing to enforce the Arbitration Agreement as well as the Confidentiality Agreement after simply severing the three unconscionable provisions. We agree.

"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474,

15

478.) " '[T]he burden is on the party complaining to establish that discretion was abused.' " (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1056.)

After the trial court issued its ruling in this case, the California Supreme Court decided *Ramirez*, in which it reiterated that "[t]he 'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.' " (*Ramirez, supra*, 16 Cal.5th at p. 513.) Indeed, the high court noted, although " '[Civil Code section 1670.5, subdivision (a)] appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement,' it 'also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.' " (*Ramirez*, at p. 513.) The high court then provided guidance on how to determine whether severance, in a given case, could be accomplished without effectively rewriting the agreement and, if so, whether severance would best serve the interests of justice. (*Id.* at pp. 516–517.)

*Ramirez* explained that "no bright-line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term. Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term. Instead, the appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified. At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.' (*Armendariz, supra*, 24 Cal.4th at p. 124.) If so, the contract cannot be cured, and the court should refuse to enforce it. If that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary. (See *Armendariz, supra*, 24 Cal.4th at pp. 124–125.) If no 'reformation is

16

required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose.  [Citations.]  If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract.  [Citations.]  Courts cannot 'rewrite agreements and impose terms to which neither party has agreed.' "  (*Ramirez, supra*, 16 Cal.5th at p. 516.)

Thus, *Ramirez* makes clear that, one, the severability analysis is "qualitative" rather than quantitative and, two, the mere fact that an arbitration agreement contains multiple unconscionable provisions does not, without more, establish the key issue of whether the agreement's central purpose is "tainted with illegality."  (*Ramirez, supra*, 16 Cal.5th at p. 516.)  Instead, "the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage."  (*Ramirez*, at pp. 516–517.)  "If the answer to either question is yes, the court should refuse to enforce the agreement." (*Id*. at p. 517.)  Otherwise, "courts may liberally sever any unconscionable portion of a contract and enforce the rest when:  the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice.  (*Ibid.*; see *Wise v. Tesla Motors, Inc.* (2025) 117 Cal.App.5th 325, 339, petn. for review filed Jan. 30, 2026.)

17

Here, the trial court did not undertake this inquiry. The court described the Arbitration Agreement, read together with the Confidentiality Agreement, as "permeated" with unconscionability and declined to sever, without providing any explanation as to how it reached this conclusion. In light of " 'California's strong public policy in favor of arbitration, [which requires that] any doubts regarding the validity of an arbitration agreement [be] resolved in favor of arbitration,' " we cannot conclude the court's ruling was a proper exercise of discretion. (*Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 247; see *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 579 ["the policy ' "favoring" ' arbitration is not one of promoting arbitration over litigation, but instead of ensuring that arbitration agreements are not disfavored, i.e., that they are treated like other contracts"].)

Indeed, as Select Comfort notes, the Arbitration Agreement appears to meet the basic requirements of fairness and mutuality for arbitration of claims pursuant to a mandatory employment arbitration agreement identified in *Armendariz, supra*, 24 Cal.4th at pages 102–112, 117. The Arbitration Agreement, among other things, provides for: (1) a neutral arbitrator selected by both parties; (2) discovery of all relevant, nonprivileged documents; (3) an arbitral award consisting of "any remedy or relief that would have been available to the Parties, in their individual capacity, had the matter been heard in court"; (4) a written decision identifying the arbitrator's essential findings and conclusions; (5) the company's obligation to pay costs unique to arbitration, including arbitrator fees; and (6) a *mutual* obligation to resolve "any and all disputes, claims or controversies between the parties" by arbitration. In addition, both the Arbitration Agreement and the Confidentiality Agreement contain severance clauses, which, under *Ramirez,*

*supra*, should be taken into account "as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." (16 Cal.5th at p. 517.) It is unclear on our record whether the trial court appropriately considered these factors.

Accordingly, we vacate the trial court's order denying Select Comfort's motion to compel arbitration and remand this matter for reconsideration of the severability issue in accordance with *Ramirez, supra*, 16 Cal.5th at pages 516–518.

## DISPOSITION

The order denying Select Comfort's motion to compel arbitration is vacated. The matter is remanded to the trial court to reconsider the severability of the unconscionable provisions of the Arbitration Agreement and the Confidentiality Agreement in light of *Ramirez, supra*, 16 Cal.5th 478. In all other regards, the order is affirmed. The parties shall bear their own costs on appeal.[1]

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A170057/*Tawasha v. Select Comfort Retail Corp.*

---

[1] We reach no decision as to whether plaintiff is entitled to seek reimbursement for her payment of these costs from the arbitrator pursuant to the Arbitration Agreement.

19